MRS. S. W. BINGHAM *et al. v.* JACOB WELLER *et al.*

(*Jackson.* April Term, 1904.)

1. **DEEDS OF CONVEYANCE.** Conveyance of land to a married woman and her bodily heirs or "body" heirs vests absolute estate in her.

A conveyance of land to a married woman and her bodily heirs or "body" heirs to be held by her to her own bodily heirs vests a fee simple estate in her, and vests no estate in her children. (*Post, p.* 77.)

Cases cited and approved: Middleton v. Smith, 1 Cold., 144; Kirk v. Ferguson, 6 Cold., 483; Wynne v. Wynne, 9 Heis., 309; Owen v. Hancock, 1 Head, 563.

2. **SAME.** Same. Decree vesting title to land acquired by reinvestment as it was held in the land sold.

Where land conveyed to a married woman and her bodily heirs is sold by order of court for reinvestment, and the title to the land in which the proceeds are invested is by decree vested in her and her children, their heirs and assigns forever, to be held by them in like manner as they owned the land sold for reinvestment, a fee simple title is vested in her by said decree exactly as it was under said conveyance, and no estate is thereby vested in her children.

3. **CURTESY.** In separate estate in wife's land conveyed to her by a third person.

A conveyance of land by a third person to a married woman to be held by her as her separate estate, with full power of disposition, does not deprive the husband of his curtesy estate therein after her death. (*Post, pp.* 78, 79.)

Cases cited and approved: Baker v. Heiskell, 1 Cold., 641; Frazer v. Hightower, 12 Heis., 94; Carter v. Dale, 3 Lea, 710.

**4. SAME. None in land conveyed by husband to wife.**

A conveyance of land by husband to his wife creates a separate estate in her, and divests out of him all interest, present or contingent, in the land, and he will not be entitled to an estate by the curtesy therein. (*Post, pp.* 79-82.)

Cases cited, distinguished, and approved: Frazer v. Hightower, 12 Heis., 94; Carter v. Dale, 3 Lea, 710; Barnum v. LeMaster, 2 Cates, 638.

---

**FROM SHELBY.**

---

Appeal from the Chancery Court of Shelby County.— F. H. HEISKELL, Chancellor.

HENRY CRAFT, for complainants.

TURLEY & TURLEY, for defendants.

---

MR. JUSTICE WILKES delivered the opinion of the Court.

Mrs. S. W. Bingham filed the bill in this cause against her father, Jacob Weller, to have her rights and interests in two pieces of property in the city of Memphis declared, to recover this interest, and also her share of the rents and income which have been collected from said property by her said father. Her father, Jacob Weller, claims that he is entitled to the possession of the property as tenant by the curtesy of his wife, Caroline Weller, who died in July, 1899.

There are two pieces of this property, one known as

the "Main Street" and the other as the "Beale Street" property.

On the 20th of February, 1851, H. B. Joiner conveyed to Mrs. Caroline Isabella Weller and her bodily heirs, forever, a certain piece or parcel of land on Market street, in Memphis, Tennessee, to be held by her to her own bodily heirs, free from the debts and liabilities of her husband, Jacob Weller.

At that date Mr. and Mrs. Weller had two children living, to wit, Sarah W. and ———.

On the 10th of October, 1857, they had four children living, to wit, Sarah W., John J., Henry Clay, and Robert F., and all of them at that time were minors. At that date Jacob Weller and his wife, Caroline I., and the four minor children above named, by their next friend, John S. Erwin, filed their ex parte petition or bill in the chancery court at Memphis, setting up the purchase by Jacob Weller of this lot, and stating that it was conveyed to Caroline Weller, and her bodily heirs. The deed from Joiner is made an exhibit to the petition, and shows that the land was conveyed to Caroline I., and her bodily heirs, as before stated. The petition prayed that the Market street property might be sold, and the proceeds reinvested in other property, or loaned out under the direction of the court. It also asked the court to construe said Joiner deed, and determine the amount of interest or title in said Market street lot acquired by the said Caroline I. and her four children, who were-parties thereto.

In these ex parte proceedings, on the twelfth of January, 1858, a decree was entered adjudging that under the Joiner deed the children of Caroline I. Weller took an estate and interest in common with her in the Market street property, and the cause was referred to the clerk to report whether it was manifestly to the interest of the said Caroline I. and her minor children that the Market street lot should be sold, and proceeds invested in other property, or loaned out under the direction of the court. The clerk and master reported that it would be manifestly to the interests of the parties, and especially of the children, to sell the property, and invest the proceeds in other property, or loan it out at interest, as the court might order. This was confirmed by the chancellor, and it was again adjudged that Caroline I. and her children, named in the petition, held the Market street property in common, and directing it to be sold. This decree was renewed on June 16, 1858, and again on January 22, 1859.

On November 28, 1859, an order was entered showing that petitioners had dismissed their petition.

Nothing further appears to have been done until the November term, 1865, when a decree of sale was renewed.

On February 2, 1866, the clerk and master reported that Gen. W. Y. C. Humes had offered to give $11,000 for the Market street property, and on the third of February, 1866, the clerk reported that the offer was a good one, and ought to be accepted.

No further step appears to have been taken in the case.

On the twentieth of February, 1868, Jacob Weller, the husband, filed his original bill against his wife, Caroline I. Weller, and their minor children, J. J. Weller, Sarah W., Henry Clay, Robert F., Caroline I., and Forrest L. Weller. The bill alleged that this Market street property was conveyed by Joiner to Caroline I. Weller to her sole and separate use, and to the heirs of her body. It made the ex parte proceedings a part of the bill, and referred to the deed as being on file in that case. It set out that the Market street property could be sold for $11,000; and prayed that it might be sold, and the proceeds reinvested by Jacob Weller in other city property, upon the same trust as was set out in the deed from Joiner, heretofore referred to. A decree was entered directing a sale of the property for $11,000, upon proof and report of the clerk and master that it was to the interest of the parties that the sale should be made. The sale was ordered to be made by Jacob Weller as special commissioner, the minimum price to be $11,000.

On the twenty-first of July, 1866, Jacob Weller reported to the court that he had sold the Market street lot to Alston, and this sale was confirmed, and title to the Market street lot was vested in him, and the commissioner was ordered to report to the next term of the court what disposition he had made of the money.

On the nineteenth of January, 1869, he reported that

Bingham v. Weller.

he had used $8,109 in the purchase of a lot on the north side of Beale street, and that by mistake he had taken the title to himself, instead of to his wife and children, and he preferred to convey the Beale street lot to his wife and children, to hold just as they held the Market street lot, or, in lieu thereof, to convey to them the Main street lot, which at that time belonged to him, to be held in the same way by his wife and children. This report sets out that the Main street lot was more valuable than either the Market street lot or the Beale street lot. This report was confirmed on January 16, 1869, and the cause was referred to the clerk to report whether it would be best to invest the proceeds in the Main street lot or in the Beale street lot. The clerk and master reported that the Main street lot was the better investment, and should be made. This report was confirmed on the tenth of February, 1869, and it was ordered that the Main street lot should be taken and accepted as an investment of the Market street property. And it was further ordered that all right, title, and interest of the said Jacob Weller in said Main street lot should be divested out of him, and vested in said Caroline I. Weller and her children by the said Jacob Weller in like manner as they owned the Market street property under the deed from Henry B. Joiner, and that the title be vested in them and their assigns, forever.

During the pendency of this case Henry Clay and Robert F. died intestate, and without children. Caro-

line I. Weller has died, leaving her husband, Jacob Weller, and the four children, Mrs. Bingham, John J., Caroline I., and Forrest L.

It is insisted on behalf of Mrs. Bingham that the last proceeding in the court to which we have referred vested the title to the property in Caroline I. Weller and her two children, Mrs. Bingham and John J. Weller, who were alive at the time the deed was made by Joiner in 1851; and hence Mrs. Weller, the mother, and Mrs. Bingham and John J. Weller, were entitled to a one-third interest in common in the Market street property, and upon the death of her mother she inherited one-fourth of her one-third interest so that her interest in the property is five-twelfths of the same.

The argument is that the decree of the court construing the deed of Joiner to Mrs. Weller adjudged that the title to the lot was vested in Mrs. Weller and her children, and all the parties in interest being before the court in that case are bound by its decrees construing the deed and fixing the right of the parties.

The chancellor, in his decree in the present case, however, adjudged that the title to Market street property was vested in Caroline I. Weller in fee simple.

The construction contended for by Mrs. Bingham cuts out the after-born children from any interest in the property, and also cuts out the husband from any interest as tenant by curtesy.

We are of opinion that the language used by the chancellor in fixing the rights of the wife and children of

Jacob Weller in the Main street property intended to place the title and interest in the property exactly as it existed under the deed from Joiner to Caroline I. Weller to the Market street property.  The decree is confusing and contradictory in its terms, in that it vests the title in the Main street property in the wife and children of Jacob Weller, to be held by them, their heirs and assigns; but it further provides that they should hold it and own it in like manner as they owned and held the Market street property under the deed from Joiner to them.  Now, the deed from Joiner to Caroline I. Weller recites that the property is conveyed to Caroline I. Weller and her "body" heirs; and under the uniform course of our decisions this vested a fee simple estate in Caroline I. Weller, and vested no estate in her children. *Middleton* v. *Smith,* 1 Cold., 144; *Kirk* v. *Ferguson,* 6 Cold., 483; *Wynne* v. *Wynne,* 9 Heisk., 309; *Owen* v. *Hancock,* 1 Head, 563.

Under these contradictory terms of the decree, we are of the opinion that the court intended to vest the title to the Main street lot in Caroline I. Weller in fee simple, just as she took title to the Market street lot under the Joiner deed.

It follows that upon the death of Caroline I. Weller, her husband, Jacob Weller, became entitled to an estate by curtesy in the Main street lot; and that, subject to this curtesy interest, the estate vested in the heirs of Mrs. Caroline I. Weller, but no estate vested in them until her death, and then only as her heirs.

As to this feature of the case the decree of the chancellor is reversed and modified so as to give to Jacob Weller a curtesy interest in the Main street lot or its proceeds.

The title to the Beale street lot was vested in Caroline I. Weller, by deed from her husband, Jacob Weller, executed April 10, 1876. The husband conveys this property to the wife to her sole, separate, and exclusive use as a separate estate, free and discharged from all his control and liabilities, but with full power to her to sell, convey, or mortgage the same at her pleasure. The habendum recites that she is to have and to hold it as separate estate as above stated, with power of alienation, and it contains a general warranty.

It is insisted for complainant that the terms and the language of this deed deprive her husband, Jacob Weller, of any interest in the estate, both during the life of the wife and after her death.

In the answer filed in this case two of the children— Carrie I. and Forrest L.—set out over their signatures that they desire their father, Jacob Weller, to retain possession of this Beale street lot, and receive the rents therefrom as long as he lives.

It has been held by this court that a deed made by a third person to the wife, her heirs and assigns, forever, to be free from the control and liabilities she may hereafter have, with full power to dispose of the same at all times as she deems proper, does not deprive the husband of this curtesy estate in such property after her death.

*Carter* v. *Dale, Ross & Co.,* 3 Lea, 710, 31 Am. Rep., 660; *Frazer* v. *Hightower,* 12 Heisk., 94; *Baker* v. *Heiskell,* 1 Cold., 641.

Clearly, there is nothing in this deed to deprive the husband of his curtesy interest in this land if the deed had been made a third person; and this is virtually admitted. But it is said that, inasmuch as the deed was made by the husband to the wife, a different rule prevails.

The case of *Barnum* v. *Le Master,* 2 Cates, 638, 75 S. W., 1045, is cited to sustain this contention. In that case the court undertook to say what effect should be given a deed from the husband to the wife, and the court held that it should be held to pass to the wife the highest estate that the husband could convey. In the course of the opinion the court uses language as follows: "If a transfer of personal property to the wife by the husband did not, of its own force, vest in her a separate estate, the transfer would be a farce, and perhaps a fraud upon her, because the husband would immediately become again the owner of it by virtue of his marital rights, and the wife would take nothing. If the same result did not follow a conveyance of land by a husband to his wife, he would, by the same marital rights, become seized of an estate therein during their joint lives; and, if they have a child born alive, for his life, if he survives her, as tenant by the curtesy."

It is admitted that in that case the husband and wife were both alive, and he could not, therefore, be tenant

by the curtesy; and it is said that the question as to the right of the husband to curtesy, after the wife's death, was not involved in that case.

In *Frazer* v. *Hightower,* 12 Heisk., 94, the husband had conveyed to a trustee for his wife certain lands; and the question was whether the husband, after the death of the wife, took an estate by curtesy in the lands so conveyed to the trustee. In that case it was said: "By a fair construction, then, we think that, while Daniel Hightower, by this deed, did surrender to his wife, during coverture, the rents, profits, and possession of this land, yet, as we have already said, he made no settlement of the estate beyond her lifetime. The death of the wife renders the tenancy by the curtesy consummate or complete. Inasmuch, therefore, as this deed makes no settlement of the land in the event of the wife's death, but provides only for dominion and control over it during coverture, the husband thereby abridged his estate for that period only, and, having survived her, he is entitled to take as tenant by the curtesy. We see no reason why he shall not be taken to have intended when he made this conveyance to his wife, that she was to hold the estate as every estate of inheritance is held by a wife; that is, subject to curtesy."

Referring again to the case of *Barnum* v. *Le Master,* the court said, in support of its holding that "otherwise the wife would not only be deprived of all the fruits of ownership during all this time (that is, during the marital relation), but she could not sell or convey it without

Bingham v. Weller.

his consent and joiner in the conveyance. A power in the husband over the disposition of the property often enables him to control and reacquire title by reducing to possession the proceeds of the sale of it. The wife would acquire a bare right to sell with the concurrence of her husband while he lived, and only comes into full ownership and enjoyment in the event she should survive him. An estate more in the nature of a remainder than an absolute one taking effect immediately, which the deed purports to pass, and wholly inconsistent with the terms of the instrument."

We are of opinion that the conveyance of real estate by the husband to the wife should have the same effect as the gift or transfer of personal property; that is, to divest out of the husband all interest, present or contingent, in the land; and upon the death of the wife the real estate should go to the devisees of the wife, if she make a will; and, if she die intestate, to her heirs, free from any claim on the part of the husband for curtesy or other interest; and that the case of a conveyance from a husband to the wife of real estate must, to this extent, be distinguished from a conveyance by a third person to the wife for her separate estate.

This case is distinguishable from the case of *Carter* v. *Dale, Ross & Co.,* supra, which was a conveyance from a third person to the wife, and not from the husband.

This case is distinguishable also from the case of *Frazer* v. *Hightower,* 12 Heisk., 94. In the latter case

113 Tenn—6

Bingham v. Weller.

the conveyance was in trust for the wife, and the court construed the language of the conveyance to indicate that the object of the husband was merely to secure to the wife the rents and profits of her real estate during the marital relation, and no longer.

The decree of the chancellor as to the Beale street property is also reversed; Jacob Weller having no interest therein or claim thereon.

The costs of appeal will be paid equally by complainants and defendants, and of the court below as directed by that court, and the cause is remanded for further proceedings under this holding and the agreements of parties heretofore made, as shown by the record.