## KOHNSTAMM v. PEDRICK, Collector of Internal Revenue.

### No. 129.

Circuit Court of Appeals, Second Circuit.

Dec. 28, 1945.

Osmond K. Fraenkel, of New York City (Charles H. Levitt, of New York City, of counsel), for appellant.

Marvin M. Notkins and John F. X. McGohey, U. S. Atty., all of New York City, for appellee.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff appeals from a judgment, after a trial upon stipulated facts, dismissing his complaint in an action to recover income taxes, assessed and paid for the years 1939, 1940 and 1941. The validity of the taxes depends upon the construction of a deed of trust executed by the plaintiff on April 23, 1928, the substance of which was as follows. He transferred to the Farmers Loan and Trust Company of New York, as trustee, 3,200 shares of common stock (valued at $400,000) in H. Kohnstamm & Co. Inc., a New York corporation in which he and his family had long been interested, and of which he was vice-president during 1939, and president thereafter. The deed directed the trustee to collect the income and to divide it into four equal parts: one for his wife, and one for each of his three children, or the issue of any deceased child. At that time the children were all minors, and so they remained during the years in issue, except that one became of age on December 13, 1941. As to the wife's share, the trustee was to "apply the net income thereof to the use of, or pay the same," to her during her life with directions over upon her death which are not relevant; and, as to the share of each child, the trustee was similarly to "apply the net income thereof to the use of or pay the same to the child" until he or she became twenty-five years of age, and thereafter upon limitations, again not relevant. The payments to the children were qualified later by providing that "the said Trustee during the minority of each of the Donor's said children shall apply to the use of each such child, the net income to which such child is entitled * * * by paying such net income * * * to his or her mother * * * to be applied by her in her absolute discretion without accountability therefor, towards the education, support, maintenance and welfare of such child." The trustee was authorized to apply to the use of any child in addition to its income, such part of the principal as in the trustee's judgment was proper, any such distribution being, however, conditional upon the settlor's consent while he lived. He was authorized to direct the trustee to make sales and investments of the securities transferred as he thought best, and the trustee must comply, and must retain the property transferred until he otherwise directed. The settlor might direct the trustee to execute proxies to vote on any shares of stock in the fund, and he could withdraw any securities from the fund, provided he substituted property of "approximately equivalent" value. Power was also reserved to him "to modify or alter any of the provisions of this agreement relating to the Trustee, its power, authority and responsibility with respect to the trust estate, and the administration thereof"; and to revoke the appointment of the trustee and nominate any successor in its place, provided it was a corporation authorized to do a trust business, with a capital of $1,000,000.

Before the years now in question the property originally transferred had become

much diversified, so that by 1939 only sixty per cent of the entire fund remained in the common shares of H. Kohnstamm & Co. Inc. The settlor's wife, to whom the income of the three children was paid, did not use all of it for their support and maintenance, but invested a large part in stocks, bank deposits, mortgages and corporate bonds, which yielded income. During the years in question there were outstanding 31,510 shares of common stock of H. Kohnstamm & Co. Inc. Of these the trustee held 3,696 and the plaintiff after November 19, 1939, held 3,294. The Kohnstamm interests, besides the plaintiff's and the trustee's were as follows. Edward, a second cousin of the plaintiff, held 6,291 shares until his death on November 19, 1939, after which his executors (of whom the plaintiff was one and a trust company was the other) kept 5,591. Joseph, another second cousin, held 2,874 shares: he was declared incompetent on November 16, 1939, and the plaintiff and one Woolf were appointed his committee. While competent he had transferred 2,656 shares to a trust company without any provision as to voting. One, William Longfelder, owned 2,722 shares individually, and had transferred 3,381 in trust. He died on January 5, 1939. Neither his executors, nor the trustee were related to the plaintiff. Eight other persons held individual lots ranging from 1,602 to 259 shares—4,505 in all; and thirty to forty employees held 1,423. Between 763 and 1,368 were held in the corporate treasury: we shall use 1,000 as an average, and consider the outstanding shares as 30,000. Thus the shares whose voting rights the plaintiff controlled singly were 6,990 and those which he and another jointly controlled were 8,465; the percentage of his sole control was therefore 23.3 and of his joint control 27.5. The Commissioner assessed all the income arising from the trust against the plaintiff on the theory that his reserved control over the fund brought him within Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. He assessed against him the income which had accrued upon the children's investments made by their mother, upon the ground that she constantly consulted the plaintiff in the management of the children's affairs. The judge accepted both these conclusions and dismissed the complaint.

■ We start by laying aside any argument based upon Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154, not because we think that decision necessarily inapposite, but because, in spite of the somewhat equivocal language used by the defendant, both in the district court and here, we understand that he does not mean to rely upon it as a defence. The Commissioner is authorized so to limit his position —Helvering v. Wood, 309 U.S. 344, 60 S.Ct. 551, 84 L.Ed. 796—and we cannot doubt that the defendant has like authority. Since the trust was for the lives of the beneficiaries, and the settlor reserved no power to revoke it, solely or jointly with another, it was not within § 167, for by no possibility could he receive any pecuniary benefit from the income save as relief from his marital or paternal obligations, which we are disregarding. It is true that, in common with settlors in all family trusts, he received those "satisfactions" described in Helvering v. Horst, 311 U.S. 112, 117, 61 S.Ct. 144, 147, 85 L.Ed. 75, 131 A.L.R. 655; "The taxpayer has equally enjoyed the fruits of his labor and investment and obtained the satisfaction of his desires whether he collects and uses the income to procure those satisfactions, or whether he disposes of his right to collect it as the means of procuring them." The Supreme Court has however disclaimed any purpose to apply this language to every situation which it covers. Pearce v. Commissioner, 315 U.S. 543, 554, 62 S.Ct. 754, 86 L.Ed. 479. And we had ourselves already anticipated that conclusion. Helvering v. Elias, 2 Cir., 122 F.2d 171, 173. As we understand it, it is only when a parent severs the income and retains the principal that the "satisfaction" of his familial "desires" becomes the equivalent of income.

Freed from both the doctrine of Helvering v. Stuart, supra, and that of Helvering v. Horst, supra, we are therefore to consider whether the powers reserved to the plaintiff were enough to bring him within Helvering v. Clifford, supra. That question comes to us in quite another form than upon an appeal from the Tax Court. Upon such an appeal, where the facts were closely parallel to this (Bush v. Helvering, 2 Cir., 133 F.2d 1005), we considered ourselves bound by a passage in Helvering v. Stuart, supra, to remand the cause to the Tax Court, whose decision would conclude us, unless there emerged with inescapable clarity some error of law that we could not evade. Here, however, we have an appeal from a district judge, whom—however much we may personally defer to his opin-

ion—we must not invest with that immunity which we accord to the Tax Court. The task of interpreting the statute comes to us as in any other case; and under Helvering v. Clifford, supra, we understand that we are to cumulate the elements of retained control, and say whether because of them the settlor remains in "substance" the "owner" of the trust fund. In the case at bar, not only had the plaintiff parted with all pecuniary interest in the fund, but he could not change its devolution among the beneficiaries. The only powers which he retained we may summarize as follows: (1) he could sell any part of the fund and substitute equivalent investments; (2) practically, he could perhaps terminate the trust as to any child by accelerating the distribution to the child of his share of the principal; (3) he could vote upon all shares of stock. The first of these powers, when reserved by a settlor in a trust for lives, and unaccompanied by any power over the devolution, or redistribution, of income or of principal, has been uniformly held not alone to bring the situation within Helvering v. Clifford, supra. Commissioner v. Branch, 1 Cir., 114 F.2d 985, 132 A.L.R. 839; Helvering v. Palmer, 2 Cir., 115 F.2d 368; Jones v. Norris, 10 Cir., 122 F.2d 6; Commissioner v. Betts, 7 Cir., 123 F.2d 534; Hall v. Commissioner, 10 Cir., 150 F.2d 304. It is quite true, as we said in Helvering v. Elias, supra, that the importance of such a power as a factor varies inversely with the length of the trust, but that does not mean that even in a long trust, it will be enough unless more goes along with it.

We have said that the plaintiff also reserved the power to accelerate the payment to any child of his share of the principal. That is indeed very doubtful, and we assume that the deed went so far only because even so, we think that the power should be disregarded, for reasons we shall state. Strictly speaking all that the plaintiff reserved was that the trustee's power to accelerate a child's share could not be exercised without his consent, and that certainly was not the same as the plaintiff's own power to accelerate such a payment. When, however, we read along with this the plaintiff's power to alter or modify the trustee's powers touching administration, and his power to substitute a new trustee, it is at least arguable that the plaintiff might force an acceleration if he wished to. At any rate, arguendo, we shall assume as much, for it makes no difference, as we

view it. The trust does not then become one in which the settlor can change the distribution of the income or principal among a group of beneficiaries, as he could in Commissioner v. Buck, 2 Cir., 120 F.2d 775. All he can do is to free a child's share from the trust earlier than the deed provided; and whatever might be the importance of that after the child came of age it would make no substantial difference to him during his minority, for the share set free would pass to the custody of the child's guardian and become subject to the control of a court. We put aside any other exercise of the power to alter, because we regard it as confined to the details of the administration of the fund; and we put aside any other exercise of the power to substitute a trustee, because, although it could be used to secure a complaisant trustee, any new trustee would be circumscribed by all the substantial limitations of the deed.

The remaining power was to vote the shares of stock in the fund; and that could add nothing of any importance except in the case of the shares of H. Kohnstamm & Co. Inc. One or two courts have considered it a relevant circumstance that the settlor—either as trustee, or having power over the trustee—was a high official in a company, a controlling number of whose shares were in the fund; but they have merely counted it as one of many factors which taken together kept the "ownership" in the settlor, and we have no way of knowing how much it weighed in their conclusion. Miller v. Commissioner, 6 Cir., 147 F.2d 189, 193; Edison v. Commissioner, 8 Cir., 148 F.2d 810. Armstrong v. Commissioner, 10 Cir., 143 F.2d 700, 704, is not in point because the settlor's interest was not in a corporation, but in a partnership where its quantum was irrelevant. The nearest approach to any decision in which voting control appears to have played an important part is Cushman v. Commissioner, 4 T.C. 512, where the Tax Court held that absolute power of management and investment, coupled with the power to vote the shares of a company in which the settlor was chairman of the board, subjected him to tax. As we compute the holdings in that case, the shares in the fund, together with what the settlor himself owned, gave him forty per cent of the whole voting strength of a corporation in which apparently the shares were widely scattered. It is of course true that the ownership of enough shares to control a company adds

to their value, and is often an important incident of ownership, quite aside from the selling value of the shares themselves. The extent to which a given per cent of voting strength gives control, varies greatly with the company; in many large corporations the management has not been disturbed for years, though it controlled only twenty per cent, or even less, of the proxies. In the case at bar, as we have shown above, the plaintiff held twenty-three per cent of the voting strength, either individually or as settlor, and he had a joint control of twenty-seven per cent. We may assume that he could prevent the shares in joint control from being voted against his wishes; on the other hand we should have no justification in assuming that his fellow fiduciaries would yield to those wishes against their own better judgment, and the most that the defendant can ask is that the percentage held jointly shall not be counted on either side. If so, the plaintiff would have twenty-three per cent out of seventy-three per cent of the voting power. It seems to us that the reservation of this original ownership in the shares was too tenuous to be counted.

In conclusion therefore we are disposed to hold that the combination of all those powers which the plaintiff reserved to himself did not bring him within Helvering v. Clifford, supra, and make him the "owner" for taxation as he originally was for all purposes. The test is impalpable enough at best; but if it is to be continually refined by successive distinctions, each trifling in itself, we shall end in a morass from which there will be no escape; and the spate of decisions already poured upon us will be the earnest of eventual utter confusion. Perhaps it is best not to approach the issue dialectically at all, but merely by fiat; at least in those cases where, as here, we cannot repose in the sheltering bosom of the Tax Court.

Be that as it may, we cannot understand on what conceivable theory the income from the investments made by the children's mother is to be taken as the plaintiff's. The defendant suggests nothing to support this extraordinary position except that she uniformly consulted her husband about what she should do. It would indeed add terror to marital confidences, if, whenever a woman asked her husband's advice, sporadically or uniformly, about what to do with their children's money, she took the chance that their income would be add-

ed to his for purposes of taxation. It may be that for tax purposes the jural indissolubility of the family will in the end be restored to the position it occupied in archaic law; but, so far that has not happened.

Our mandate will be held up for sixty days to enable the defendant to reconsider, if he wishes, the position he has taken regarding Helvering v. Stuart, supra; but if he still adheres to it, the judgment will be reversed and the case remanded.

Judgment reversed.