UNITED STATES of America,
Plaintiff,

v.

Herbert GREEN, Jr., Defendant.

UNITED STATES of America,
Plaintiff,

v.

Joseph MAHOOD and Mildred Mahood,
Defendants.

United States District Court
S. D. New York.

June 24, 1959.

Arthur H. Christy, former U. S. Atty. for S. D. New York, S. Hazard Gillespie, Jr., U. S. Atty. for S. D. New York, New York City, for plaintiff. William F. Suglia, Asst. U. S. Atty., New York City, of counsel.

Tachna, Pinkussohn & Bauman, New York City, for defendant Herbert Green, Jr.

White & Case, New York City, for defendants Joseph Mahood and Mildred Mahood.

CASHIN, District Judge.

Two actions to recover allegedly erroneous tax refunds are involved herein. Because both actions arise out of the same fact situation they will be treated together even though no consolidation of the actions had been ordered. The parties in both cases have entered into stipulations of fact, and both plaintiff and defendant in each case have moved for summary judgment. The question presented is whether or not the defendants, as settlor-beneficiaries of a trust, could take as deductions on their federal income tax returns the New York State income taxes paid by the trustee on capital gains and the trustee's termination commission.

On January 17, 1938 Arma Corporation was formed and 260 shares of stock were issued as follows:

| | | |
|---|---|---|
| Joseph Mahood | 50 | shares, |
| Helen Petit | 80 | " |
| Herbert Green, Jr. | 30 | " |
| Amy Green | 100 | " |

Subsequently, 240 shares were issued to third parties. On December 1, 1938 Joseph Mahood, Helen Petit and the Greens created a trust, the corpus of which was the 260 shares (52%) of Arma Corporation. The life of the trust was to be measured by the lives of Green and Mahood and the survivor of them, and was irrevocable although it could be altered or modified by two-thirds of the settlors. Under the terms of the trust the trustee had no power to sell and no liability, responsibility or accountability for any loss except its own gross negli-

gence or wilful misconduct. The trustee could participate in any plan of reorganization and could exercise all conversion, subscription, voting and other such rights as Joseph Mahood and Herbert Green, Jr. should direct in writing. The trustee was to collect and receive the income and pay it to the settlor or such persons as the settlor should designate. If the settlor died, the income was to go to the person designated by will or under the intestacy law of New York if the settlor died intestate.

On May 15, 1944 the trust was amended to substitute David Mahood and Arthur Davis for Joseph Mahood and Herbert Green, Jr., for a period of five years, as the parties authorized to direct the trustee in the exercise of its voting powers. This was done in order to induce Clyde McDowell to accept the position of vice-president and general manager of Arma Corporation. On April 26, 1946 the trust agreement was amended to authorize the sale of the corpus which was then effected, for cash and stock worth a total of $4,264,286.20.

On December 31, 1946 each of the parties to the original trust agreement executed a release of the powers to direct the trustee in the sale and investment of the corpus. This was done in order to take advantage of the provisions of Mim. 6071, dated October 10, 1946, issued by the Internal Revenue Bureau, and thereby avoid capital gains being taxed to the settlors individually. Then, in 1947, the trust was revoked by the settlor-beneficiaries, pursuant to Section 23 of the Personal Property Law of the State of New York, McKinney's Consol. Laws, c. 41, and the trustee paid itself a termination commission of $21,421.75.

New York State and federal fiduciary returns were filed by the trustee for the year 1946 reporting the sale of the corpus and showing the following taxes to be due:

Federal ............ $1,059,571.58
New York State ..... 36,919.70

Subsequently, Mahood filed amended federal tax returns for 1947 and 1948, and Green filed an amended tax return for 1947, claiming deductions for their proportionate share of the New York State income tax paid by the trustee, and their proportionate share of the trustee's termination commission. As a consequence of these amended returns, $5,068.46 was refunded to Mahood on December 11, 1950, and $2,588 was refunded to Green on August 11, 1950.

Whether or not defendants are entitled to these deductions depends on whether the trust was a separate taxable entity or not. Under the terms of the trust the settlors retained a life interest in the income, a general power of appointment by will as to the income and principal, and the power to sprinkle the income to anybody. Also, each party to the trust had the power, with any two other parties, to amend the trust or to replace the trustee. It seems unquestionable that these powers are enough to create a Clifford type trust (see Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788) and not a separate taxable entity.

In Commissioner of Internal Revenue v. Buck, 2 Cir., 1941, 120 F.2d 775, 777 the taxpayer had the right to direct the income of the trust to anyone but himself. The court found no trust, stating:

"When to such [administrative] control there is coupled the power, until his death, freely to sprinkle the income about among any beneficiaries he may select (as if he were playing a hose), it is impossible to conclude, in the light of the recent decisions of the Supreme Court, that the income is not taxable to him."

In Ferdinand A. Bower, 1948, 10 T.C. 37, the mere fact of being able to direct the distribution of income and principal was sufficient to make it taxable to settlor. The Tax Court quoted Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 147, 85 L.Ed. 75, to the effect that "The power to dispose of income is the equivalent of ownership of it". In the Bower case,

supra, the settlor had no administrative powers at all, while in the present case the settlors had broad administrative powers in addition to the power to sprinkle the income. In Ingle v. McGowan, 2 Cir., 1951, 189 F.2d 785, 787 the settlor had power to sprinkle to anyone but himself. The court stated:

" * * * a settlor who can control the spending of a fund in every respect except spending it for himself, is sufficiently the 'owner' of the fund to make its income taxable to him * * * ".

Plaintiff relies on May Chandler Goodan, 1949, 12 T.C. 817, Kohnstamm v. Pedrick, 2 Cir., 1945, 153 F.2d 506 and Estate of Hiram Solomon, 1956, 27 T.C. 426, to support its contention that this is not a Clifford type trust. In none of these cases did the settlor retain the power to sprinkle the income. Similarly, the administrative powers retained by the settlors were much fewer than the ones retained in the present case. In the present case there is no question that the income from the trust is taxable to the settlors and thus they are entitled to deduct the expenses of the trust.

Plaintiff argues that, even if the income from the trust is taxable to the settlors at the outset, they expressly revoked their control over the trust prior to the taxable years involved by the release of December 31, 1946. There is no merit in this contention since all the settlors released was their power to direct investments and sales. They still retained all their powers over the income.

Since all the income of the trust is taxable to the settlors, they are entitled to the deductions and the refunds were warranted.

The Clerk is directed forthwith to enter judgment in favor of the defendant in each of the actions.