**UNION PLANTERS NATIONAL BANK, Executor of the estate of Forrest C. Ladd, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 16500.**

United States Court of Appeals Sixth Circuit.

June 14, 1966.

Robert A. Bernstein, Atty., Dept. of Justice, Washington, D. C. (Richard M. Roberts, Acting Asst. Atty. Gen., Meyer Rothwacks, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., on the brief; Thomas L. Robinson, U. S. Atty., Memphis, Tenn., of counsel), for appellant.

Crawford McDonald, Memphis, Tenn., (McDonald, Kuhn, McDonald, Crenshaw & Smith, Memphis, Tenn., of counsel), for appellee.

Before PHILLIPS and EDWARDS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

HARRY PHILLIPS, Circuit Judge.

The single question presented on this appeal is this: When a husband conveyed his family residence to his wife as a completed gift without reserving any legal title, right or interest therein, but there-after continued to live with his wife in the home until his death, is the value of the residence includible in his taxable estate for federal estate tax purposes?

The district court answered this question in the negative.

This suit was filed to recover estate taxes paid by the executor of the estate of Forrest C. Ladd. Claim for refund was filed and rejected. The district court rendered judgment in favor of the executor in the amount of $5,239.10, plus interest. The United States has appealed.

Mr. and Mrs. Ladd were married in 1941. About 1950 they purchased a tract of real estate in Memphis, Tennessee, of suitable size for the construction of a residence. Mr. Ladd paid for the land out of his own earnings. Title initially was vested in him and Mrs. Ladd as tenants by the entirety. After 1953 they built a residence on the lot, using $40,000 of money saved from the earnings of Mr. Ladd and borrowing $17,500. This loan was paid in full out of the husband's earnings prior to his death.

They moved into the residence soon after its completion and thereafter adopted two children and occupied the residence as a home until the death of Mr. Ladd.

In April 1958, Mr. Ladd stated that he wanted to give the residence to his wife and he thereupon conveyed his interest to her by warranty deed which was duly delivered and recorded, vesting in her the fee simple title. After being placed of public record, the deed was kept in a safety deposit box to which both Mr. and Mrs. Ladd had access. The family continued to live in the house until Mr. Ladd's death, he paying the bills and Mrs. Ladd managing the house as theretofore. Mr. Ladd died in 1959 as the result of an accidental drowning.

The executor did not include the residence in the estate tax return. A deficiency was assessed on the ground that the residence was includible in the taxable estate under § 2036(a) of the Inter-

nal Revenue Code of 1954,[1] which requires inclusion of the value of any property interest of which the decedent at any time made a transfer under which he retained the possession or enjoyment of the property until his death.[2]

Both parties filed motions for summary judgment. The Government contended that, from the foregoing facts, the court must find that there was an express or implied agreement between Mr. Ladd and his wife that he would continue to live in the residence and have possession and enjoyment of it; and that, even if such an agreement is not to be inferred, the fact that Mr. Ladd continued to live in the residence until his death is sufficient basis to include it in his taxable estate.

In support of its motion for summary judgment, the executor relied upon the deposition of Mrs. Ladd, who testified that there was never any discussion between her and her husband that would have limited the gift of the residence in any manner and that there was no written or oral agreement between them that he would continue to have the use and enjoyment of the house. Mrs. Ladd stated frankly that she intended that she and her husband always would live together and assumed that he felt the same, but there was no discussion between them and no agreement to the effect that he would have the right to live in the house.

The district judge overruled both motions for summary judgment, 238 F.

Supp. 883 (W.D.Tenn.), and submitted to the jury the following interrogatory:

"In 1958, when he executed the deed to the residence, was there an implied agreement or understanding between Mr. and Mrs. Ladd that he would have the right to continue to live in the residence?"

The jury answered this question in the negative.

First we consider the legal effect of the conveyance from Mr. Ladd to Mrs. Ladd under Tennessee law.

A State statute expressly provides that:

"Where property is held by husband and wife as tenants by the entirety, either spouse may by direct conveyance of his or her interest therein vest the other spouse with title thereto in fee simple." T.C.A. § 64–110.

Tennessee case law is to the same effect. Howell v. Davis, 196 Tenn. 334, 268 S.W.2d 85 (1954); 23 Tenn.L.Rev. 911 (1955).

■ The result of the enactment by the Tennessee Legislature of the Married Women's Emancipation Act of 1913 and Chapter 126, Acts of 1919, T.C.A. § 36–601, was to enable a married woman to own real estate in her own name free from all claims and rights of her husband. By force of these statutes, a married woman can sell her real estate as if she were unmarried, and without her husband

---

1. 26 U.S.C., § 2036. Transfers with retained life estate

"(a) General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

"(1) the possession or enjoyment of, or the right to the income from, the property, or

"(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom."

(This quotation reflects the 1962 amendment, which has no application in this case.)

2. The Government also contended originally that the residence was taxable as a transfer made in contemplation of death under § 2035, but subsequently withdrew this contention. The case was tried in the district court solely on the question of whether the residence was taxable under § 2036(a).

joining in the conveyance. Jefferson County Bank v. Hale, 152 Tenn. 648, 280 S.W. 408 (1925).

Even prior to the enactment of these statutes, it was held that a conveyance of a husband's real estate to his wife created a separate estate in her, divesting him of all interest, vested or contingent, and that he would not be entitled to an estate by the curtesy or any other interest therein after her death. Bingham v. Weller, 113 Tenn. 70, 81, 81 S.W. 843, 69 A.L.R. 370 (1904).

█ A husband has no right of homestead in real estate owned by his wife in her own name. Turner Bros. v. Argo & Co., 89 Tenn. 443, 14 S.W. 930 (1890).

█ We agree with the district court that, under State law, the deed from Mr. Ladd to Mrs. Ladd in 1958 vested in her the fee simple title to the residence. At any time thereafter during her lifetime, she could have conveyed it by her separate deed, without the consent of her husband. Mr. Ladd had no legal right to possession or enjoyment of the home during his lifetime. Tennessee law does not require that a married woman owning a residence in her own name must permit her husband to occupy the residence with her. In event of the prior death of Mrs. Ladd, title to the house would have passed under her will, or if intestate to her heirs at law, free from any claim of her husband for curtesy, homestead or other interest.[3]

█ In determining the question of the tax consequences of the conveyance, however, we look not to state law but to the federal estate tax statute, specifically 26 U.S.C. § 2036(a) (See footnote 1).

As said by the Supreme Court in Morgan v. Commissioner, 309 U.S. 78, 80–81, 60 S.Ct. 424, 426, 84 L.Ed. 585 (1940):

"State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law."

We now turn to the purpose and effect of the federal taxing statute, 26 U.S.C. § 2036 (Footnote 1), which includes in the gross estate for tax purposes any property as to which the decedent has retained possession or enjoyment during his life and where the retained possession and enjoyment does not in fact end before his death.

The broad scope of this section was stated by the Supreme Court in Commissioner v. Church, 335 U.S. 632, 645–646, 69 S.Ct. 322, 329, 93 L.Ed. 288 (1949), involving an irrevocable trust with a retained life income, as follows:

"[A]n estate tax cannot be avoided by any trust transfer except by a bona fide transfer in which the settlor, absolutely, unequivocally, irrevocably, and without possible reservations, parts with all of his title and all of his possession and all of his enjoyment of the transferred property. After such a transfer has been made, the settlor must be left with no present legal title in the property, no possible reversionary interest in that title, and no right to possess or to enjoy the property then or thereafter. In other words such a transfer must be immediate and out and out, and must be unaffected by whether the grantor lives or dies."

This opinion traces the origin and development of the "possession or enjoyment" provision in the various revenue statutes pointing out that Congress used the "possession or enjoyment" clause in death tax legislation in 1862, 1864 and 1898, and that it was included in the 1916

3. Under the Tennessee statute of descent, if Mrs. Ladd had died intestate survived by her husband, the residence would have passed (1) to her adopted children if surviving, or (2) to her surviving brothers or sisters, or their issue or (3) to her father or mother or the survivor of them, or (4) to the heirs at law of her father and mother, all to the exclusion of her husband. T.C.A. § 31–101.

estate tax statute "to frustrate estate tax evasions." 335 U.S. at 638, 69 S.Ct. 322.

In Goldstone v. United States, 325 U.S. 687, 690–691, 65 S.Ct. 1323, 1325, 89 L.Ed. 1871 (1945), involving life insurance in which the decedent reserved certain rights, the court said that the statute:

> "reaches all *inter vivos* transfers which may be resorted to, as a substitute for a will, in making dispositions of property operative at death.. It thus sweeps into the gross estate all property the ultimate possession or enjoyment of which is held in suspense until the moment of the decedent's death or thereafter. Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U.S. 108, 111 [65 S.Ct. 508, 510, 89 L.Ed. 782]. In so doing, § 302(c) pierces all the verbiage of 'unwitty diversities of the law of property.' Helvering v. Hallock, supra, [309 U.S. 106] 118 [60 S.Ct. 444, 450, 84 L.Ed. 604]. Testamentary dispositions of an *inter vivos* nature cannot escape the force of this section by hiding behind legal niceties contained in devices and forms created by conveyances."

The courts have applied this statute so as to subject to estate taxation a wide variety of transfers where the transferor by one device or another retained an economic benefit or interest in the property transferred. Greene v. United States, 237 F.2d 848 (C.A.7, 1956); see Markovits, *The Fate of Inter Vivos Transfers under Internal Revenue Code Section 2036*, 7 Tax Counsellor's Quarterly 395 (1963). Retained interests need not necessarily be reserved in the instrument of transfer and need not be legally enforceable in order to come within the reach of the statute. Lehman v. Commissioner, 109 F.2d 99 (C.A.2), cert. denied, 310 U.S. 637, 60 S.Ct. 1080, 84 L.Ed. 1406 (1940).

We are cited to no decision, however, where the "possession and enjoyment" provision of the statute has been held to be applicable to a situation where, as in the present case, the husband has divested himself completely of all title, right and interest in the home but continued to occupy it with his wife as a residence as a natural incident to the marital relationship. During the many years that the "possession and enjoyment" provision has been in the statute, it appears that the Commissioner rarely has asserted such an interpretation. When this contention has been made, the decisions unanimously have been against such a construction of the statute. Binkley v. United States, 358 F.2d 639 (C.A.3, 1966); Stephenson v. United States, 238 F.Supp. 660 (W.D.Va.1965); Estate of Wier, 17 T.C. 409, 422 (1951).

The statute was amended by Congress in 1931, 46 Stat. 1516, and the amended language was reenacted in the Revenue Act of 1932, so as to meet the adverse decisions of the Supreme Court in May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826 (1930), as applied in McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343 75 L.Ed. 1413 (1931), Morsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412 (1931) and Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412 (1931). We find nothing in the language of the statute and are cited to nothing in the legislative history of this and other revenue acts to indicate any congressional intent to impose the tax upon the estate of a husband who has vested the fee simple title to the family residence in his wife, merely because he continues to live in the house until his death.

Congress has been specific in taxing property held by the husband and wife as tenants by the entirety, joint tenants or in any other form of joint ownership coupled with a right of survivorship. 26 U.S.C. § 2040. No such specific language is to be found in § 2036.

It is significant that in United States v. Jacobs, 306 U.S. 363, 371, 59 S.Ct. 551, 555, 83 L.Ed. 763 (1939), holding the estate tax applicable to property owned by a husband and wife as joint tenants, the Court said: "Until the death of her co-tenant, the wife could have severed the joint tenancy and thus have escaped the

application of the estate tax of which she complains."

The Government contends that a contract for continued possession and enjoyment must be implied from the fact that a husband gave the family residence to his wife but continued to live in the home until his death. We think this is no more logical than to contend that personal property, such as an automobile or household effects, given by the husband to the wife, must be taxed to his estate because he continues to use such property jointly with his wife until his death.

The Commissioner relies strongly upon the decisions of the Court of Appeals of the Third Circuit in Skinner's Estate v. United States, 316 F.2d 517 (1962) and McNichols Estate v. Commissioner, 265 F.2d 667, cert. denied, 361 U.S. 829, 80 S.Ct. 78, 4 L.Ed.2d 71 (1959). We consider these decisions to be correct and authoritative under the facts there at issue, but we, as did the Court of Appeals of the Third Circuit in its recent decision in Binkley v. United States, supra, refuse to apply this rule to a completed gift by a husband to his wife of the family residence.

The problem presented by this case is essentially one of statutory interpretation and should be resolved by Congress. See 41 Notre Dame Law. 97 (1965). In the absence of a clearly expressed congressional intent, we decline to adopt a construction of this statute requiring a presumption or inference of an implied contract based entirely upon the existence of the family relationship. We do not read the present language of this statute to require a holding that "the existence of a family relationship in itself is a handicap to one's right to contract or to express the virtue of unselfishness." Burrill v. Shaughnessy, 71 F.Supp. 99 (N.D.N.Y., 1947).

Affirmed.

EDWARDS, Circuit Judge (concurring).

I concur in the opinion of the court—but without either enthusiasm or illusion.

The plain trend of the federal estate tax statute is toward elimination of exceptions such as this. 26 U.S.C. § 2036 (1964); 26 U.S.C. § 2040 (1964); United States v. Jacobs, 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763 (1939); Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604 (1940); Commissioner v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 93 L.Ed. 288 (1949).

In spite of this trend, however, I find it impossible to agree with the government's argument that the statute as it is currently written contains language which serves to bring the instant apparently never considered fact situation under the tax umbrella.

In this regard I am persuaded by the logic and the authorities contained in Judge Phillips' opinion—particularly the quote from Mr. Justice Black from the *Jacobs* case:

"Until the death of her co-tenant, the wife could have severed the joint tenancy and thus have escaped the application of the estate tax of which she complains." United States v. Jacobs, 306 U.S. 363, 371, 59 S.Ct. 551, 555 (1939).

Although this sentence is clearly dictum, it is surely well informed dictum. And if applicable to the fact situation of *Jacobs,* it seems to apply a fortiorari to our present case.

Obviously, if the present holding of this court receives United States Supreme Court approval, there are only two possible results. Either Congress will act promptly to plug the loophole, or many a well informed taxpayer (who is confident of the security of his marriage!) will put title to the marital home in his wife's name. In some situations this may prove to be an unfortunate test of one partner's judgment of the security of the marriage. And if Congress fails to act, the most socially desirable form of possession of a marital home (joint ownership, with rights of survivorship) will be put at an unfortunate tax disadvantage.