ESTATE OF ALLEN D. GUTCHESS, THE TOLEDO TRUST COMPANY, EX-
ECUTOR, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 4926–63. Filed August 9, 1966.

*James F. Kennedy, Jr.*, for the petitioner.
*Ronald S. Supena*, for the respondent.

MULRONEY, *Judge:* Respondent determined a deficiency in the estate tax of petitioner-estate in the sum of $5,902.38.

The issue presented here is whether the decedent, Allen D. Gutchess, retained, within the meaning of section 2036 of the Internal Revenue Code of 1954, the possession and enjoyment of the family residence for his life even though he had deeded it to his wife, Julia, about 11 years before his death.

### FINDINGS OF FACT

Some of the facts have been stipulated and they are found accordingly.

In 1932 decedent bought a residence at 2311 Evergreen Road, Ottawa Hills, Toledo, Ohio, and he and his wife Julia moved into it and made it their home until decedent's death on June 30, 1960. Decedent had been married before and a daughter, the only child of this first marriage, was largely raised by her two grandmothers. Decedent and Julia also had a son and daughter who lived with them until they were married in 1955 and 1944, respectively, and the residence is now Julia's home.

Decedent was a retired executive of a corporation. He had a very substantial income. Julia also had income-producing real property and stocks which she had inherited. They had a joint bank account in which they both deposited and on which they both checked and Julia kept a smaller separate household bank account for household affairs.

Decedent had diabetes when he retired in 1949 and because of what was believed to be a family problem (mother and stepdaughter situation) decedent believed Julia would be more secure if she owned the residence property.

On or about September 8, 1949, the decedent quit-claimed the title to his residence property, known as 2311 Evergreen Road, Ottawa Hills, Toledo, Ohio, to his wife Julia B. Gutchess who at all times after September 9, 1949, and up to and subsequent to decedent's death, was

the record owner of the property. No consideration was paid to decedent for the conveyance. Decedent paid taxes on the residence after the transfer and also on other property Julia owned.

In the Federal estate tax return filed by the Toledo Trust Co. as executor of decedent's estate, the home was not included as an asset of the estate. In his determination of deficiency respondent added the value of such property, explaining:

The property known as 2311 Evergreen Road, Ottawa Hills, Ohio, was transferred by the decedent to his wife, Julia B. Gutchess, in September 1949. The value of such property is deemed includible in the decedent's gross estate in accordance with the provisions of Section 2036 of the Internal Revenue Code of 1954.

### OPINION

It is respondent's position that the residence involved in this proceeding is includable in the gross estate of decedent under section 2036, I.R.C. of 1954. We have set forth the pertinent portion of said statute in the margin.[1]

In order for the statute to apply with respect to an inter vivos transfer of property there must be a retention of "the possession or enjoyment" of the property by the transferor. There is some indication in respondent's brief that he is arguing that the mere fact the husband continued to live in the residence after the transfer and until he died is sufficient to make the property includable in the husband's estate under the above statute.[2]

Some statements in some of the decided cases in this area offer support for the conclusion that express or implied retention of rights to use or enjoy the property is not necessary where there was actual use and enjoyment by the transferor after the transfer.

In *Commissioner* v. *Estate of Church*, 335 U.S. 632 (1949), the decedent transferred property to an irrevocable trust but the trust instrument required that the trustees pay the income to him for life. In the course of the opinion holding the transferred property includable in the decedent's estate, the Court stated—

an estate tax cannot be avoided by any trust transfer except by a bona fide transfer in which the settlor, absolutely, unequivocally, irrevocably, and without possible reservations, parts with all of his title and all of his possession and all of his enjoyment of the transferred property. * * *

---

[1](a) * * * The value of the gross estate shall include the value of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer * * * under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

  (1) the possession or enjoyment of * * * the property, or

  (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

[2] Petitioner so interprets respondent's brief for in his reply brief petitioner states: "The position of the respondent, judging from his brief, is that for an inter-vivos transfer of a residence from a husband to his wife to escape estate taxation there must be an agreement that the husband should move out and stop living in the residence."

In *Skinner's Estate* v. *United States*, 316 F. 2d 517 (C.A. 3, 1963), the facts were much the same as the *Church* estate except that there the trust indenture gave the trustees "sole and absolute discretion" as to making payments of income to decedent. During her lifetime decedent actually received all of the income from the trust and this was deemed sufficient to warrant a conclusion that there was a pre-arrangement between decedent and trustee that she was to have the income and therefore it was held the trust corpus was includable in her estate. In the course of the opinion, the Court stated:

We realize, as did the court below, that to some degree at least it was breaking new and perhaps dangerous ground in reaching this decision. Judge Layton stated: "[T]he court is aware that the holding in this case places a heavy burden upon the estate of a settlor of a discretionary trust to avoid the inference of secret prearrangements with the trustee when the settlor has in fact received all income during his life."

In our opinion in *Estate of Daniel McNichol*, 29 T.C. 1179, affd. 265 F. 2d 667 (C.A. 3, 1959), the decedent transferred realty to his children but thereafter continued to receive and treat as his own all rents from the property. There was no retained interest stated in the transfer instrument but the grantees at the time of the transfer understood the grantor was retaining a life estate. We held the property includable in decedent's estate, stating:

Thus, property transferred will be included in a decedent's estate if in fact the decedent retained possession or enjoyment thereof for his life, regardless of whether, in the case of income-producing property, he had a legal right to the income.

* * * Since Congress has established "possession or enjoyment" of the property as an alternative test to the "right" to the income, we construe the provision to mean that "possession or enjoyment" is to be determined as a matter of fact and not on the basis of a construction, either express or implied, of the words of the instrument of transfer.

In all of the above cases there are statements that could be said to mean no right of retention would be necessary if there was actual retention of use and enjoyment by the transferor after the transfer. However, in all of these cases involving transfers of income-producing property the courts were able to find agreements or prearrangements with respect to retention that were express or implied on which to base the transferor's right of retention. Where post-transfer *income* is actually retained without any objection by the transferee it is reasonable to conclude that some pretransfer agreement or arrangement for such retention existed.

Respondent argues here that there was retained possession because there was post-transfer occupancy and therefore there must have been an understanding or implied agreement between decedent and his wife that decedent would continue to occupy the residence. But the spouses' joint occupancy of a home after an interspouse transfer of

the residence is insufficient in and of itself to indicate the existence of an agreement for retained enjoyment. In such a case there is not such a withholding of use from the transferee as is present when the transferor actually retains income from property he has transferred. The transferor husband's use of the property by occupancy after the transfer is a natural use which does not diminish transferee wife's enjoyment and possession and which grows out of a congenial and happy family relationship. Such post-transfer use is insufficient to indicate any prior agreement or prearrangement for retention of use by the transferor. *Union Planters National Bank* v. *United States*, 238 F. Supp. 883 (W.D. Tenn., 1964), affd. 361 F. 2d 662 (C.A. 6, 1966) ; *Stephenson* v. *United States*, 238 F. Supp. 660 (W.D. Va. 1965) ; *Estate of Gordon A. Binkley* v. *United States*, 358 F. 2d 639 (C.A. 3, 1966) ; and *Estate of Robert W. Wier*, 17 T.C. 409.[3]

Respondent makes some argument that there was an express agreement for the husband's post-transfer occupancy. The agreement is based upon that portion of Julia's testimony where she said at the time the residence was purchased in 1932 she and her husband decided to make it their family home. This fragment of testimony is construed by respondent on brief as showing an agreement between them for joint occupancy that was never changed. There is no merit in this argument. Julia's testimony with respect to any express retention by decedent is very clear. When she was asked, if at the time of the transfer there was any written or oral agreement with respect to his right to continue to reside in the residence, her answer was a firm: "Not a word."

Respondent also makes some argument that under Ohio law (Ohio Rev. Code sec. 3103.04) one spouse cannot be excluded from residence in the other's dwelling except by decree of court, and no such decree was obtained here. It is difficult to see how that would have any bearing here. If decedent had some residence rights granted by Ohio law that would not mean retention of use and enjoyment *"under"* a transfer as required by the statute that is here involved.

Respondent makes some argument that the transfer of his residence was a partial fulfillment of decedent's legal obligation to support his family, citing his regulation, sec. 20.2036–1(b) (2). There is nothing in the instrument of transfer and no evidence at all that the transfer was in satisfaction of decedent's obligation to support his wife. There is nothing here to indicate decedent's duty to support his wife was

---

[3] In *George H. Burr Estate*, a Memorandum Opinion of this Court (Nov. 27, 1945), the husband transferred a summer home to his wife. We held, p. 1062, the decedent retained no interest and his occupancy of the residence with his wife during the summer months was "at the sufferance of his wife and not because of any rights he possessed in the property."

discharged in any manner by the gift. A husband can certainly make a gift to his wife of the family home without affecting his duty to support her. *Shanley* v. *Bowers*, 81 F. 2d 13, 15.

We hold for petitioner on the issue presented. Because of other adjustments, which the parties say can be agreed to, a Rule 50 computation will be necessary.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

TANNENWALD, *J.*, concurring: I have no doubt that in the type of situation involved herein the husband and wife both assume that, as long as they are happily married, they will continue to live in the family homestead together. But it is equally clear that often a husband puts the homestead in his wife's name and considers—not without trepidation in some cases—that in so doing he has put himself at his wife's mercy. Under such circumstances, I agree that respondent should not be allowed to conjure up the Genie "retained * * * possession or enjoyment" full-blown out of the Aladdin's Lamp of the marital relationship.[1]

Congress has seen fit in section 2040 to deal specifically with real property rights arising out of joint tenancies and tenancies by the entireties. It is not without significance that tenancies in common are not included in the coverage of the section. If respondent's contention herein were sustained, the result would be either that the entire value of residences owned as tenants in common could be swept into the husband's estate or that ownership by the wife alone would be less favorably treated than ownership as a tenant in common. I do not believe that the broad general language of section 2036, utilized by Congress to deal with other situations, should be the mechanism for accomplishing by indirection what has been conspicuously omitted from the coverage of more precise provisions.[2]

To impose upon the taxpayer the burden of proving a negative (i.e., absence of an agreement or understanding) and to categorize a transaction herein as "obviously a substitute for a testamentary disposition"[3] is to infuse the estate tax law with the concept that the family should as a matter of law be treated as a unit. Congress has not seen

---

[1] I note that respondent has only very recently awakened from his Rip Van Winkle slumber and renewed his attack on the instant type of transaction. *Estate of Robert W. Wier*, 17 T.C. 409 (1951), acq. 1952–1, C.B. 4, withdrawn and nonacq. 1966–1 C.B. 4.

[2] The relevancy of possible diminution of the transferee wife's enjoyment and possession is questionable, even within the context of a determination whether there is an implied agreement or understanding. The presence or absence of diminution might have some significance in other situations, e.g., whether the annual value of the husband's occupancy after the transfer constitutes a taxable gift by the wife.

[3] This observation would be relevant if the issue herein was whether there was a gift in contemplation of death under sec. 2035.

fit to import such unitary doctrine into the tax law and I do not think we should become the chosen instrument for that purpose. *Union Planters' National Bank* v. *United States*, 361 F. 2d 662 (C.A. 6, 1966). As Judge Learned Hand said in *Kohnstamm* v. *Pedrick*, 153 F. 2d 506, 510 (C.A. 2, 1943) : "It may be that for tax purposes the jural indissolubility of the family will in the end be restored to the position it occupied in archaic law; but, so far that has not happened."

FAY, *J.*, agrees with this concurring opinion.

———

RAUM, *J.*, dissenting: The prevailing opinion concludes that the decedent's continuous occupancy of the property from the time of transfer until the date of his death "is insufficient to indicate any prior agreement or prearrangement for retention of use by the transferor," and it rejects the contention that there was any "understanding or implied agreement between decedent and his wife that decedent would continue to occupy the residence."

It must be remembered, however, that the burden of proof is upon petitioner, not upon the respondent. To conclude, in spite of that burden, that there was no such understanding or implied agreement seems to me to fly in the face of all human experience. And the error is compounded by assuming that the conclusion is compelled as a matter of law. I know of no rule of law requiring such judicial credulity.

The error of the majority is underscored by the fact that the transfer herein was obviously a substitute for a testamentary disposition with actual retention of "possession or enjoyment" of the property until the decedent's death, thus bringing the case within the very letter and spirit of the statute. How many times must a statute be amended to insure that the legislative purpose, apparent enough on the first enactment, will be given effect by the courts?

TIETJENS, *J.*, agrees with this dissent.