ESTATE OF SYLVIA H. ROEMER, DECEASED, ELIZABETH TAYLOR, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Roemer v. Commissioner
Docket No. 22286-81.
United States Tax Court
T.C. Memo 1983-509; 1983 Tax Ct. Memo LEXIS 281; 46 T.C.M. (CCH) 1176; T.C.M. (RIA) 83509; August 22, 1983. *281 From 1970 to 1975 decedent and her daughter lived together. In 1975 decedent purchased another house and the two moved there. Shortly thereafter decedent deeded the house to her daughter. The motive was an expression of gratitude for her daughter's giving up her own residence in 1970. Held,sec. 2036, I.R.C. 1954, is not applicable and value of house is not includable in decedent's estate. Facts show each considered that title to house had changed and acted accordingly. Stephen W. Phillips and James W. Zeeb, for the petitioner. Richard Patrick, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By notice of deficiency dated May 29, 1981, respondent determined a deficiency in the Federal estate tax *282 of petitioner-estate in the amount of $47,737.48. Due to concessions by petitioner, the sole issue for decision is whether the decedent, Sylvia H. Roemer, retained, within the meaning of section 2036, I.R.C. 1954, the possession and enjoyment of certain real property for her life even though she had deeded it to her daughter more than 3 years prior to her death. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Elizabeth Taylor is the daughter of the decedent, Sylvia H. Roemer, and is also the appointed personal representative for the Estate of Sylvia H. Roemer. Mrs. Taylor resided in Tucson, Arizona at the time of filing the petition herein. The Federal estate tax return was filed with the Internal Revenue Service Center, Ogden, Utah. From sometime in 1970 through early 1975, decedent and Mrs. Taylor resided together at 9530 E. Morrill Way, Tucson, Arizona. Early in 1975, decedent sold this home and on February 11, 1975, purchased a residence at 2494 Camino Valle Verde, Tucson, Arizona for a price of $66,000. Decedent and *283 Mrs. Taylor moved into the latter residence in March of 1975 and jointly occupied it until decedent's death in January 1979. Shortly after the move to the new residence, decedent approached her attorney, Mr. Daniel J. Sammons, with the idea of giving the residence to Mrs. Taylor. The motives behind the proposed gift were an expression of appreciation for Mrs. Taylor's having given up her own home and moving in with decedent to care for her in her old age and a desire on the decedent's behalf to provide Mrs. Taylor with her own home. Decedent explained to Mr. Sammons that her son and her other daughter were both married and had homes at that time, and she wanted Mrs. Taylor also to have a home of her own. Mr. Sammons informed her at their meeting that, if she undertook such action, she would completely lose ownership and control over the residence and could be "kicked out" at any time by her daughter. After reflecting for a period of time upon her attorney's advice, decedent transferred the real property located at 2494 Camino Valle Verde to her daughter Elizabeth Taylor on June 27, 1975. In connection with the gift, decedent filed a United States Quarterly Gift Tax Return on *284 July 9, 1975 reflecting such transfer and paying the gift tax due thereon based upon the full fair market value of the residence. Although Mrs. Taylor did not charge her mother any rent for living in her house, after making the gift the decedent referred to her daugher as her landlord and expressed fears of going to a nursing home. She also began asking Mrs. Taylor's permission before inviting friends to the residence. After the June 1975 gift of the residence, for the first time Mrs. Taylor assumed responsibility for arranging maintenance, redecorating and landscaping of the gifted residence. The decedent continued to pay the expenses for the maintenance, insurance, and utilities on the residence; however, the property taxes and grocery bills were paid by both the decedent and her daughter, and the first post-gift payment of property taxes due on the residence was made from Mrs. Taylor's separate checking account. She also paid for the cost of landscaping the residence. For the period 1975 to 1978, the decedent's Federal tax returns reflect gross income in excess of $27,000 per year, while Mrs. Taylor's tax returns for the same period show gross income of less than $4,300 *285 per year. Although decedent remained in the gifted residence for the rest of her life, she never mentioned the existence of any agreement or understanding that she would so remain to either her attorney or friends. Decedent died on January 27, 1979 at the age of 86 from an acute myocardial infarction. In the Federal estate tax return filed by Mrs. Taylor as personal representative of the estate, the residence at 2494 Camino Valle Verde was not included as an asset of the estate. In his notice of deficiency respondent included the value of such property in decedent's gross estate, explaining: It is determined that the value of real property located at 2494 Camino Valle Verde, Tucson, Arizona, is includable in the gross estate since the decedent kept a life estate in the property. The fair market value of the property was $99,000.00 at the date of death. Therefore, the taxable estate is increased $99,000.00 OPINION The sole issue for our consideration is whether the value of decedent's residence must be included in her gross estate pursuant to section 2036, which provides in pertinent part as follows: *286 SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE. (a) General Rule.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death-- (1) the possession or enjoyment of, or the right to the income from, the property, * * *. This section requires that the residence be included in the decedent's estate if it is found that she retained the actual possession or enjoyment thereof, regardless of whether she had any enforceable right to do so. Estate of Rapelje v. Commissioner,73 T.C. 82, 86 (1979); Estate of Honigman v. Commissioner,66 T.C. 1080, 1082 (1976). It is well settled that possession or enjoyment is considered to be retained by the donor when there is an *287 express or implied understanding to that effect among the parties at the time of the transfer. Guynn v. United States,437 F.2d 1148, 1150 (4th Cir. 1971); Estate of Rapelje v. Commissioner,supra at 86; Estate of Honigman v. Commissioner,supra at 1082. In the instant case, there clearly was no express agreement allowing decedent to retain possession and enjoyment of the gifted residence. However, respondent contends that there was an implied agreement or understanding between the decedent and her daughter whereby decedent would continue her occupation of the residence. The burden is on petitioner to disprove the existence of any implied agreement or understanding. Skinner's Estate v. United States,316 F.2d 517, 520 (3d Cir. 1963); Rapelje v. Commissioner,supra at 86. In determining whether an implied agreement or understanding existed between the parties, we must consider all relevant facts and circumstances surrounding the transfer and subsequent use of the property. In this respect, *288 the two factors that the courts have found particularly significant are the continued exclusive possession by the donor and the withholding of possession from the donee. Gynn v. United States,supra at 1150; Rapelje v. Commissioner,supra at 87. Neither of these factors is present in the instant case. In point of fact, the decedent and her daughter lived together in two different homes for a period of approximately 9 years. This co-occupancy began 5 years prior to the gifting of the residence in question and continued until decedent's death in January 1979--almost 4 years after the residence was transferred to Mrs. Taylor. Because the decedent in the present case did not retain exclusive possession of the gifted residence, we find all such cases cited by respondent easily distinguishable and therefore not dispositive of the factual situation with which we are faced. See, i.e., Guynn v. United States,supra;Estate of Rapelje v. Commissioner,supra;Estate of Honigman v. Commissioner,supra. There are, however, a number of cases in which the courts have been called upon to address the *289 application of section 2036 to intrafamily transfers in which the donor continues to reside in the gifted residence with the donee by virtue of his relationship to the donee. Union Planters National Bank v. United States,238 F.Supp. 883 (W.D. Tenn. 1964), affd. 361 F.2d 662 (6th Cir. 1966); Estate of Binkley v. United States,358 F.2d 639 (3d Cir. 1966); Diehl v. United States, an unreported case ( W.D. Tenn. 1967, 21 AFTR 2d 1607, 68-1 USTC par. 12,506); Stephenson v. United States,238 F.Supp. 660 (W.D. Va. 1965); Estate of Gutchess v. Commissioner,46 T.C. 554 (1966); Estate of Wier v. Commissioner,17 T.C. 409 (1951).In each of these cases, the courts have uniformly rejected the advocation of section 2036's applicability based on the mere fact that the donor continued to live in a residence which he had conveyed without a showing of an express or implied agreement that the donor would have the right to continue to live in the residence. Although it is true that most of the cases involved interspousal transfers, we do not read the decisions in such cases to *290 be so limited. For example, in a court-reviewed decision, this Court rejected the application of section 2036 to an intrafamily transfer stating: The transferor husband's use of the property by occupancy after the transfer is a natural use which does not diminish transferee wife's enjoyment and possession and which grows out of a congenial and happy family relationship.Such post-transfer use is insufficient to indicate any prior agreement or prearrangement for retention of use by the transferor. [Emphasis added.] [Estate of Gutchess v. Commissioner,supra at 557.] We note that if we had intended in Gutchess to limit our decision to interspousal transfers, then we could well have inserted the term "marital" in place of our usage of the term "family." The clear inference to be drawn from our choice of words is that the logic employed is not limited merely to interspousal transfers. With respect to the present case, we know of no cases, and respondent has offered none, in which section 2036 has been applied to a decedent's transfer of legal title of *291 a residence to his or her child, where the donor and donee thereafter co-occupy that residence until the decedent's death. In fact, the precedential case law, given the above-stated parameters, can be narrowed to one case, Diehl v. United States,supra.[1] The facts in Diehl closely resemble those in the case at hand. In Diehl, the decedent was 80 years old and in ill health when his wife died. After the wife's death, decedent's son, daughter-in-law, and their two young children sold their own house and moved in with the decedent. Seven months later the decedent deeded the residence to his son and daughter-in-law. Thereafter, the decedent continued to co-occupy the residence, contributing toward household expenses and paying the utility bills, until his death 9 years later. *292 In rejecting the Government's proposed application of section 2036, the trial court stated: We believe and so find that, though there was an assumption by all concerned that the father would continue to live in the residence, there was no agreement or understanding, express or implied, between the father and the son that the father would have the right to continue to live in the residence. [Diehl v. Commissioner,supra at 1608.] After a thorough examination of the evidence in the instant case, we believe that there was no agreement or understanding, express or implied, between the decedent and her daughter with respect to the decedent's continued occupancy of the residence. This is not to say that decedent's continued occupancy was not considered a possibility; however, such an assumed possibility does not rise to the level of an implied agreement. The evidence in the record clearly demonstrates the change in the decedent's state of mind regarding the residence after giving it to her daughter. After that time, she referred to Mrs. Taylor as her landlord and spoke to her friends of her fear of going to a nursing home. While her daughter had formerly consulted with *293 her before asking someone to the house, she began asking her daughter's permission before inviting friends to the residence. Furthermore, she never mentioned the existence of any sort of agreement or understanding to either her attorney or her close friends. Considering the fact that her attorney cautioned her regarding the ramifications of the giving of her residence, it seems illogical that she would not have informed him of the existence of any agreement regarding her continued occupancy--either express or implied. Her mind-set with respect to ownership of the house had changed. Mrs. Taylor's actions following the gifting of the residence also changed. For the first time, she assumed responsibility for maintenance arrangements, as well as the tasks of redecorating and landscaping. She also made the first post-gift payment of property taxes due on the residence from her separate checking account. We find that the actions of both parties were consistent with a true transfer of ownership and that decedent's continued occupancy was attributable to her close family relationship with her daughter rather than any implied agreement or understanding. Mrs. Taylor testified that, *294 if there had ever been a falling out with her mother, her mother would have been the one to have moved. We find her testimony credible. The fact that no such falling out occurred should not be the determining factor in this case.Accordingly, we hold that the residence in question was properly excluded from decedent's estate. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. We find respondent's reliance on our memorandum decision in Estate of Callahan v. Commissioner,T.C. Memo. 1981-357, to be misplaced. In Callahan,↩ the decedent transferred title to her residence to a bank as trustee under a trust whereby the decedent was the beneficiary of one-third interest in the residence and her three children were the beneficiaries of the remaining two-thirds interest. This case is distinguishable from the present case on its facts.