ESTATE OF MARION I. POWELL, DECEASED, SOUTHEAST BANK, N.A., HAROLD L. POWELL, JR., AND WILLIAM R. POWELL, CO-PERSONAL REPRESENTATIVES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Powell v. Commissioner
Docket No. 10600-89
United States Tax Court
T.C. Memo 1992-367; 1992 Tax Ct. Memo LEXIS 391; 63 T.C.M. (CCH) 3192; June 29, 1992, Filed *391 Decision will be entered under Rule 155. Prior to her death, decedent transferred fractional undivided interests in her residence to her children. Subsequent to the first of those transfers, but prior to her death, decedent moved and did not thereafter return to the residence. At her death, decedent and her children held the residence as tenants in common. Held: Only the value of decedent's cotenancy is includable in the gross estate; decedent neither had the benefit of any agreement, express or implied, that the residence would remain her home ( Estate of Honigman v. Commissioner, 66 T.C. 1080 (1976); Estate of Linderme v. Commissioner, 52 T.C. 305 (1969), distinguished), nor did her rights as a tenant in common cause her to be in possession or enjoyment of the cotenancies transferred so as to bring the values of such cotenancies into the gross estate under sec. 2036(a), I.R.C.
David G. Budd, for petitioner. James P. Dawson, for respondent. HALPERN
HALPERN
MEMORANDUM FINDINGS OF FACT AND OPINION HALPERN, Judge: Respondent determined a deficiency in petitioner's Federal estate tax liability of $ 68,029.73. Certain items having been *392 conceded or settled, the only issue remaining for decision is whether the residence located at 1300 Marlin Drive, Naples, Florida, is to be included in the gross estate pursuant to section 2036. [1]
FINDINGS OF FACT Some facts have been stipulated and are so found. The stipulation of facts filed by the parties and accompanying exhibits are incorporated by this reference. Petitioner (the Estate) is the Estate of Marion I. Powell (decedent). Decedent's copersonal representatives are Southeast Bank, N.A. (the Bank), Harold L. Powell, Jr. (Harold), and William R. Powell (William). When the petition herein was filed, the Bank's principal place of business was in Naples, Florida. Decedent is survived by two sons, William and Harold. Decedent's husband, Harold Powell, Sr. (Harold, Sr.), died in 1980. At all *393 times here relevant, William was married to Paula W. Powell (Paula) and Harold was married to Kay M. Powell (Kay). Prior to the death of Harold, Sr., decedent and he had moved to Florida from Ohio. They resided at 1300 Marlin Drive, Naples, Florida (the residence). Decedent suffered from serious medical ailments, including heart trouble, gastro-intestinal problems, and strokes. In the summer of 1982, motivated in part by health concerns, decedent decided to move from the residence. She initiated the process of obtaining an apartment at Lely Palms of Naples, Florida (Lely Palms). Lely Palms is a retirement community consisting of independent living residences and a licensed health care facility. Decedent lived in the residence until August 17, 1984, at which time she was admitted to Naples Community Hospital. On or about August 23, 1984, decedent's apartment at Lely Palms became available for occupancy. On August 23, 1984, decedent was transferred from the hospital to the health care facility at Lely Palms. On September 5, 1984, decedent was discharged from the Lely Palms health care facility to her apartment at Lely Palms. From November 16, 1984, to December 14, 1984, and *394 from January 1, 1985, to February 11, 1985, decedent was in the Lely Palms health care facility and thereafter returned to her apartment at Lely Palms. Decedent resided at Lely Palms at all times from August 23, 1984, until her death on June 12, 1985. Having decided that she no longer wished to live at the residence, decedent decided to give it to her children (William and Harold). Since an immediate gift of the residence, in its entirety, would have been subject to the gift tax, decedent determined to make annual gifts of fractional interests therein, in order to take advantage of the annual exclusion from the gift tax. [2] By deed dated December 22, 1983, decedent transferred an undivided 20-percent interest in the residence to her children and their wives (collectively, the children), transferring a 10-percent interest to William and Paula, as tenants by the entirety, and a 10-percent interest to Harold and Kay, as tenants by the entirety. Like transfers were made in 1984 and 1985. Decedent transferred no additional interests in the residence. At the time of decedent's death, the children had a 60-percent interest in the residence and decedent had a 40-percent interest. *395 At no time has any of the children occupied the residence as his or her sole or primary residence. The children maintained their permanent residences in Ohio from 1983 to decedent's death and thereafter. At no time between 1983 and the time of decedent's death was the residence used as income producing property. Decedent paid the real estate taxes on the residence for 1983 and 1984. For 1984 and until her death in 1985, decedent or the Bank, as trustee of an inter vivos trust created by her, paid the upkeep and maintenance expenses for the residence. Decedent listed the Lely Palms as her place of residence on October 17, 1984, when she opened a checking account at the Bank. Decedent listed Lely Palms as her residence on November 6, 1984, when she authorized and requested the United States Social Security Administration (by form captioned "Authorization for Deposit of Social Security Payments") to pay her social security benefits directly to her checking account at the Bank. Decedent listed Lely Palms as her residence when she filed a Form W-2P, attached to her 1984 Federal income tax return, respecting life insurance annuity payments payable by Investors Life Insurance Co. *396 of North America. On January 10, 1985, decedent executed the Homestead Renewal application, claiming the residence for homestead exemption purposes, which declaration states that her status as a permanent resident has not changed since the initial application. The Certificate of Death states that decedent died at Naples Community Hospital and was a resident of Lely Palms, Naples, Florida, at death. ULTIMATE FINDINGS OF FACT 1. After August 23, 1984, the date upon which Lely Palms became decedent's residence, decedent did not live in or derive income from the residence. 2. At no time following decedent's removal from the residence to Lely Palms was there any express or implied understanding among decedent and the children that decedent retained or reserved the right to return to the residence and again make it her full-time abode. [3]
OPINION The Statute
Section 2036 *397 provides in pertinent part: TRANSFERS WITH RETAINED LIFE ESTATE (a) General Rule. -- The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death -- (1) the possession or enjoyment of, or the right to income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom. Since it is undisputed that decedent transferred fractional interests in the residence for other than adequate and full consideration, we must consider whether the rights retained by decedent are sufficient to require inclusion under section 2036(a). Lack of Any Agreement
Respondent's primary argument, advanced both at trial and on brief, is that decedent never abandoned the residence as her abode, taking *398 up residence at Lely Palms only on a trial basis. Respondent argues that it was understood among decedent and the children that the residence would remain her home, which she would enjoy as such exclusively, without interference from the children, for so long as she wished (and in fact until her death). According to respondent, the value of the residence, in its entirety, would thus be includable in the gross estate on account of such enjoyment, notwithstanding her prior transfers of fractional interests to the children. Cf. Estate of Honigman v. Commissioner, 66 T.C. 1080, 1082 (1976); Estate of Linderme v. Commissioner, 52 T.C. 305 (1969). We have found that decedent neither returned to live in the residence following her removal to Lely Palms, nor was there any understanding, express or implied, among her and the children that she had the right to do so. Accordingly, Estate of Linderme and Estate of Honigman are distinguishable. The Interest Retained by Decedent As a Tenant in Common
At her death, decedent had transferred fractional interests in the residence equivalent to 60 percent to the children, retaining a 40-percent *399 interest for herself. Decedent and the children, therefore, jointly owned the residence. The parties are in agreement that decedent and the children held the property as tenants in common, under Florida Law. The parties also are in agreement that each tenant in common has the right to enjoy all of the property all of the time, subject only to the right of the other cotenants to do the same. See, e.g., 12 Fla. Jur. 2d, Cotenancy and Partition, sec. 25 (1979). Respondent emphasizes that decedent, as a tenant in common, therefore had the right to use and enjoy the entire residence at all times (subject only to the same right in the children). No limitation on that right having been negotiated prior to decedent's death, respondent argues that decedent retained possession or enjoyment of the entire residence as if she were the sole owner, the full value of which residence is consequently swept into the gross estate pursuant to section 2036(a)(1). There are two difficulties with respondent's syllogism. First, it ignores the fact that, while the rights of cotenants, in the aggregate, equal those of a sole owner, the rights of each cotenant are limited by the rights of the others. *400 That limitation is substantial because possession or enjoyment by one cotenant may be inconsistent with possession or enjoyment by another, in which case a resolution of such inconsistency is necessary, usually by an allocation of possession or enjoyment. The limited capacity of an asset to be possessed or enjoyed and the consequent need for an allocation is clear where possession or enjoyment of property involves its consumption or diminution, since what is taken by one cotenant cannot again be taken by another. The property law of most, if not all, jurisdictions reflects that fact and requires an accounting where one tenant in common enjoys property under such circumstances. See, e.g., Krug v. Krug, 618 P.2d 323 (Kan. App. 1980) (lessee of owners of undivided nine-elevenths of mineral estate properly made to account to two-elevenths owner); Bullard v. Broadwell, 588 S.W.2d 398 (Tex. Civ. App. 1979) (owner of undivided one-third mineral interest entitled to accounting from two-thirds owner who produced and marketed gas and oil from the tract). The requirement of an accounting in such circumstances, obviously, is inconsistent with respondent's *401 contention that a single tenant in common may possess or enjoy such property as if she or he were the sole owner. The only authority that, to our knowledge, deals with the estate tax consequences under section 2036(a)(1) of a decedent dying possessed of a tenancy in common in property paid for or transferred into such tenancy in common by him, but which property has a limited capacity to be possessed or enjoyed, also seems inconsistent with respondent's contention. Cf. Estate of Trafton v. Commissioner, 27 T.C. 610, 617 (1956) (only one-half the value of certain securities included in decedent's gross estate, where decedent and his wife were tenants in common and Tax Court did not rely on its determination that decedent's wife had furnished full and adequate consideration for her interest in the underlying property). Where the enjoyment of property does not consume or diminish it, however, the truth or falsity of respondent's argument -- that each tenant in common has, in substance, the rights of a sole owner -- is less clear. It would appear that: (1) Even a nondiminishing asset must have a limited capacity for use; (2) the collective desires of all cotenants *402 to use such asset may exceed that asset's capacity for use; and (3) in such circumstances, an allocation of possession and enjoyment would be required. That the cotenants' actual demands on a nondiminishing asset may not exceed that asset's capacity for use would not appear to undercut the observation that possession or enjoyment of such asset is, at least potentially, subject to allocation, or the consequent conclusion that rights of a tenant in common (or other cotenant) -- being subject to such allocation -- are less than that of a sole owner. Nevertheless, for the reasons that constitute our second difficulty with respondent's syllogism, we need not today resolve that case. Our second difficulty with respondent's syllogism is that respondent's position in this case runs counter to her published position. In Rev. Rul. 80-241, 1980-2 C.B. 273, 274-275 (the ruling), respondent addressed the estate tax consequences of the death of a tenant in common. The essential facts of Situation 1 of the ruling are as follows: H purchases real property and takes title with W as tenants by the entirety; H and W divorce, converting their joint ownership to a tenancy *403 in common, under the laws of their state; each then owns an undivided one-half interest in the property. The ruling observes that section 2040(a) is inapplicable because H and W no longer are tenants by the entirety, but are tenants in common. The ruling then concludes that only the value of H's undivided one-half interest as a tenant in common is includable in H's gross estate under section 2033. [4]
We have found no authority addressing the application of section 2036(a)(1) to the estate of a tenant in common other than Estate of Trafton v. Commissioner, 27 T.C. 610 (1956) (applying section 811(c)(1)(B) of the 1939 Code, the predecessor to section 2036(a)). [5] That case arguably is distinguishable from the case at bar because it involves income producing securities rather than a residence that, at least in *404 theory, could have been occupied simultaneously by more than one cotenant, without such simultaneous occupancy diminishing the full enjoyment of the property by any of the cotenants. Nevertheless, and in consideration of respondent's published position, we hold for petitioner. We note, however, that the ruling lacks any analysis of the application of section 2036(a)(1). Decision will be entered under Rule 155. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954 in effect at the time of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Under sec. 2503(b), the first $ 10,000 of gifts by the taxpayer to each donee are disregarded for purposes of the gift tax.↩
3. This finding of fact, in substance, was made by the Court from the Bench on Apr. 22, 1991, at the conclusion of the Trial in this case.↩
4. The ruling also concludes that, upon the conversion of the tenancy by the entirety to a tenancy in common, one-half the value of the property is subject to the gift tax under sec. 2515.↩
5. In Estate of Baggett v. Commissioner, T.C. Memo. 1991-362, we held the entire value of certain property, respecting which decedent was a tenant in common, to be includable in decedent's gross estate under sec. 2036. However, decedent's status as a tenant in common was incidental, as we found that decedent had reserved possession and enjoyment for life, to the exclusion of the donee-cotenants, thereby falling squarely within Estate of Linderme v. Commissioner, 52 T.C. 305, 309↩ (1969).