LIVINGSTON, Circuit Judge,
dissenting:
The majority concedes that the Tax Court properly concluded in this case that an implied agreement existed between the decedent, Margot Stewart, and her adult son, Brandon, that despite the transfer of a 49% share in her five-story Manhattan brownstone to Brandon during her lifetime, Margot Stewart would retain possession or enjoyment of at least some portion of this 49%, so that its value should be included in her gross estate. It would have been difficult for the majority to have done otherwise. The burden rested with Margot Stewart’s estate to disprove the existence of such an agreement, and yet the undisputed facts tended, instead, to show it. Thus, after the transfer of the 49% share, Margot Stewart continued to live in the first two floors of the property with her son Brandon, just as she had before. Despite the transfer, she alone continued to receive the rental income paid by the tenants who leased the upper three floors for $9000 per month. And notwithstanding that Brandon Stewart formally owned 49% of the brownstone, it was Mar-got Stewart who continued to pay essentially all the expenses associated with the Manhattan property—over $21,000 in the period before her death, as compared to the nominal amount of $1963 contributed by Brandon.
To be sure, Brandon Stewart offered testimony that, if credited, would have vitiated the tendency of these undisputed facts to show that Margot Stewart retained possession and enjoyment of the property during her lifetime. He swore that he and his mother had an oral agreement by which the income and expenses from the Manhattan property were to be reconciled with the income and expenses associated with an East Hampton property they jointly owned. If credited, this testimony would have established that Brandon Stewart was to receive the rental income associated with his 49% share and was to *163 pay 49% of the brownstone’s expenses. Brandon Stewart’s accountant, however, could not recall being informed of such an arrangement. The Tax Court concluded that Brandon Stewart’s testimony, simply put, “was not credible.” The majority takes no issue with this conclusion.
In fact, the majority takes no issue with any of this. It nevertheless vacates the decision of the Tax Court including the full value of the Manhattan townhouse in the gross value of Margot Stewart’s estate on the theory that even though an implied agreement existed, the Tax Court clearly erred in concluding that its terms were such that Margot Stewart retained possession or enjoyment of the entire 49% interest she had formally transferred—meaning, not only the income stream from the rent that was paid, but also the substantial economic benefits of residence. The majority does not—and cannot—explain how the Tax Court clearly erred as a factual matter in concluding that Margot Stewart retained all these benefits, given that her relationship to the property changed in not one significant respect from the period preceding transfer to the period after. Instead, the majority, misreading a body of case law that primarily involves transfers of 100% of a family member’s interest in a property to another family member, concludes that post-transfer co-occupancy is near-conclusive evidence that the transfer- or can no longer enjoy the substantial economic benefits of residence to the extent of the transferred interest. Indeed, the majority finds such co-occupancy dis-positive even here, where the transfer concerned only a fraction of the transferor’s interest, created a tenancy in common that guaranteed the transferor continued access to the entirety of her property, and involved a transferor and transferee who the majority agrees were found cotrectly by a court of law to have reached an agreement undercutting the economic substance of the very transfer under consideration.
This turns the proper—and longstanding—construction of section 2036 on its head. It also opens up a loophole that will vitiate to a considerable degree the efficacy of this section, in conjunction with the uniform rate schedule now applicable to estate and gift taxes, in ensuring that the estate and gift taxes are equitably imposed on all those subject to them. I respectfully dissent.
Section 2036 provides, in relevant part, as follows:
The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money’s worth), ... under which he has retained for his life
(1) the possession or enjoyment of ... the property....
26 U.S.C. § 2036(a). As the foregoing makes clear, the focus of section 2036 is upon whether a transferor—whether by express or implied agreement—in substance has retained the possession or enjoyment of property following a transfer. See Comm’r v. Estate of Church, 335 U.S. 632, 644, 69 S.Ct. 322, 93 L.Ed. 288 (1949) (noting, in interpreting the predecessor statute to section 2036, that “we look to substance, not to form” in determining the effect of a transaction (quoting Helvering v. Hallock, 309 U.S. 106, 114, 60 S.Ct. 444, 84 L.Ed. 604 (1940))); Estate of Thompson v. Comm’r, 382 F.3d 367, 375-76 (3d Cir.2004) (applying same principle to transactions under section 2036); Glaser v. United States, 306 F.2d 57, 61 (7th Cir.1962) (same). As the majority notes, the pur *164 pose of this section is to ensure that taxpayers cannot avoid the estate tax via inter vivos transfers of property that are essentially testamentary, with the transferor retaining enjoyment of the property for her lifetime. See Estate of Thompson, 382 F.3d at 375 (“Section 2036 addresses the concern that inter vivos transfers often function as will substitutes....” (citing United States v. Estate of Grace, 395 U.S. 316, 320, 89 S.Ct. 1730, 23 L.Ed.2d 332 (1969))). An implied agreement that a decedent will continue in her possession or enjoyment of property after a transfer is properly inferred from all the facts and circumstances surrounding the transfer and the property’s subsequent use, Estate of Rapelje v. Comm’r, 73 T.C. 82, 86, 1979 WL 3799 (1979); accord Estate of Abraham v. Comm’r, 408 F.3d 26, 39 (1st Cir.2005), and need not be legally enforceable, Estate of Maxwell v. Comm’r, 3 F.3d 591, 593 (2d Cir.1993) (citing Estate of Rapelje, 73 T.C. at 86). Moreover, at least where the surrounding circumstances suggest the existence of an implied agreement that would trigger section 2036, the burden falls to the estate “to disprove the existence of any adverse implied agreement or understanding,” Estate of Maxwell, 3 F.3d at 593-94, a burden that this Court has described as “particularly onerous” in the context of intrafamily transfers, id. at 594 (quoting Rapelje, 73 T.C. at 86).
As the foregoing suggests, and as the majority acknowledges, the Tax Court’s conclusions in this case regarding the implied agreement between Margot and Brandon Stewart are factual determinations reviewable only for clear error. See id. at 594. A factual determination is clearly erroneous “only if ‘although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.’ ” Mobil Shipping & Transp. Co. v. Wonsild Liquid Carriers Ltd., 190 F.3d 64, 67-68 (2d Cir.1999) (quoting Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). “[T]he fact that there may have been evidence to support an inference contrary to that drawn by the trial court” is insufficient to demonstrate clear error, Ceraso v. Motiva Enters., LLC, 326 F.3d 303, 316 (2d Cir.2003), as is a conclusion by the reviewing court that it would have reached a different determination had it been considering the evidence as a trier of fact, Mobil Shipping, 190 F.3d at 67.
In finding clear error in the Tax Court’s determination that Margot Stewart retained full possession or enjoyment of the residence she shared with Brandon as tenant in common, the majority errs in at least two respects. First, the majority misreads the very cases on which its argument principally depends. The majority relies heavily upon cases in which a transferor has conveyed 100% of his or her interest in a property to another family member, most typically a spouse, but then has continued to reside at the property with the transferee until the transferor’s death. In such circumstances, I agree that courts have often reasoned that the decedent’s “use of the property by occupancy after the transfer is a natural use ... which grows out of a congenial and happy family relationship,” Estate of Gutchess v. Comm’r, 46 T.C. 554, 557, 1966 WL 1184 (1966), and have concluded as a result that the transferor’s continued residence is not itself alone sufficient evidence from which to infer an agreement that the transferor would retain possession or enjoyment, as contemplated by section 2036, see, e.g., Union Planters Nat’l Bank v. United States, 361 F.2d 662, 666 (6th Cir.1966) (finding no basis “to impose the tax upon the estate of a husband who has vested the fee simple title to the family residence in his wife, merely because he *165 continues to live in the house until his death” (emphasis added)); Estate of Roemer, 46 T.C.M. (CCH) 1176, 1178 (1983) (citing cases, and observing that “the courts have uniformly rejected the advocation of section 2036’s applicability based on the mere fact that the donor continued to live in a residence which he had conveyed.... ” (emphasis added)).
But whereas courts considering such intrafamily transfers have relied on the compatibility between post-transfer co-occupancy and the existence of a bona fide transfer to conclude that a transferor’s continued residence at a property is insufficient evidence, by itself, to confirm the existence of an implied agreement favoring the transferor, see also 1 Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts ¶ 126.6.2 (2009), the majority, conversely, treats co-occupancy post-transfer as sufficient evidence to prove the absence of an implied agreement, at least with respect to the residential portion of the property at issue, see Maj. Op. at 157-58, 159 (observing that in cases where the transferor neither exclusively possessed a property nor excluded the transferee, “taxpayers have won in every case,” and concluding, on the basis of nothing else, that “Brandon manifestly enjoyed, and decedent did not, the benefits of the residential portion of the 49%.”); Maj. Op. at 160 (indicating that “Brandon received 100% of the economic benefit from the residential portion [of his 49% interest] by inhabiting it”). This logic not only departs from that of prior cases, but ignores that the Tax Court here was required to consider “all facts and circumstances surrounding the transfer and subsequent use of the property” in determining the existence or absence of an implied agreement. Estate of Rapelje, 73 T.C. at 86.
Next, the majority focuses not on what Margot Stewart retained after the transfer of the 49% share in her townhouse, but rather on what Brandon Stewart supposedly received. This contravenes the plain language of section 2036, which directs that the value of a gross estate shall include “the value of all property ... of which the decedent has at any time made a transfer ... under which he has retained for his life ... the possession or enjoyment of ... the property.... ” In other words, under section 2036 we look to whether the facts and circumstances surrounding a transfer evince an agreement that the transferor’s lifetime possession or enjoyment of the affected property will not be diminished, and if they do, we include the value of the transferred interest in the gross estate. This reading of the statute is confirmed by reference to the statute’s original target, the creation by the decedent of a life estate with a remainder given to relatives. In such circumstances, the statute includes the full value of the property in the decedent’s gross estate because his lifetime enjoyment of the property is undiminished—not because, after the transfer, he somehow enjoys the remainder interest given to his relatives. The Tax Court’s interpretation of section 2036 in cases involving partial transfers of real estate—where the distinction under discussion is most relevant—is consistent with this understanding of the statute. See Estate of Wineman v. Comm’r, 79 T.C.M. (CCH) 2189, 2193-94 (2000); Estate of Powell v. Comm’r, 63 T.C.M. (CCH) 3192, 3193-94 (1992).
The distinction just highlighted is significant, because neither the formal interest that Brandon Stewart received as a tenant in common nor his (purported) substantial enjoyment of that interest can, as the majority would have it, be dispositive as to Margot Stewart’s possession or enjoyment of the residential portion of the Manhattan *166 property. As a tenant in common, Margot Stewart retained the right, even after the transfer, to possess and enjoy the whole of the Manhattan townhouse, subject only to Brandon Stewart’s right to do the same. See, e.g., Jemzura v. Jemzura, 36 N.Y.2d 496, 369 N.Y.S.2d 400, 330 N.E.2d 414, 419 (1975).[1] It was thus wholly possible for her to retain substantially the same possession or enjoyment of the property that she had as the sole owner. This is not to say that a tenancy in common ought to be viewed, by itself, as sufficient evidence of an implied agreement or of the terms of such an agreement. A tenancy in common generally, and co-occupancy specifically, might be inconsistent with the transferor’s full possession or enjoyment of the property, whether because the tenancy interferes with the transferor’s subsequent desire to sell the property, because the transferee can himself file an action for partition, or simply because the co-tenants’ desires for the day-to-day use of an asset like a home are incompatible. See generally Estate of Powell, 63 T.C.M. (CCH) at 3193-3. But neither can the mere fact of a tenancy in common with co-occupancy be, as the majority would seem to have it, dispositive to a conclusion that a transferor did not continue to possess or enjoy the entirety of a property.
Estate of Wineman, one of the relatively few cases in which courts have considered the estate tax consequences of a fractional real estate transfer resulting in a tenancy in common, supports this conclusion. See 79 T.C.M. (CCH) at 2193-94. The court in that case found that no implied agreement existed between the decedent and her children regarding her transfer of a 24% interest in the family homestead, and thus that the 24% was not properly included in her gross estate, even though the decedent had continued to live with her children at the homestead after transfer. Id. at 2194. The court, however, emphatically did not rely on the mere fact of a tenancy in common, coupled with co-occupancy among family members, to determine that the children’s fractional share was not properly included in the decedent’s gross estate. It instead looked at “all facts and circumstances surrounding the transfer and subsequent use of the property,” Id. at 2193, *167 as longstanding precedent requires, see, e.g., Estate of Abraham, 408 F.3d at 39.
The facts of the case showed that the decedent’s post-transfer use of the large parcel at issue—which contained, inter alia, two residences, two large barns, a small barn, a granary, a farm shop, cattle scales, corrals, two garages, and an orchard—was limited to her own home, the garden, and the small orchard next to her home. Estate of Wineman, 79 T.C.M. (CCH) at 2194. Even so, the court noted that “the fact that decedent personally used less than all of the property [after the transfer] does not demonstrate that she did not possess and enjoy the entire property.” Id. Nor, even, was the fact that someone other than decedent paid the taxes on the property sufficient on its own to demonstrate the absence of an implied agreement. Id. Rather, it was only after these and other surrounding circumstances were considered together that the court was willing to conclude that the estate had carried its burden of proving the absence of an implied agreement. Notably, the court relied “heavily” on the credible testimony of one of the transferees that there was no understanding between the decedent and her children. Id.
In the present case, there is nothing in the record to indicate that Margot Stewart’s use of the Manhattan residence after the transfer was limited in the fashion of the decedent’s in Estate of Wineman, or that Brandon’s presence in any way interfered with Margot’s possession or enjoyment of the property. In fact, the estate concedes that Margot and Brandon Stewart amicably shared the residential property after the transfer, just as they had when Margot Stewart was sole owner. See Petitioner’s Br. at 9 (indicating that after the transfer, “Brandon and Margot lived together amicably as tenants in common, sharing the residential portion of the building”). Given Margot Stewart’s receipt of 100% of rent paid on the property, see Estate of Hendry v. Comm’r, 62 T.C. 861, 873 (1974) (noting that the actual “retention of income or revenue from the property by the decedent ... constitutes very clear evidence” of the existence of an implied agreement.); accord Estate of McNichol v. Comm’r, 265 F.2d 667, 671 (3d Cir.1959), the estate here needed to point to some facts or circumstances to carry its “particularly onerous” burden of showing the absence of an implied agreement with respect to Margot Stewart’s possession or enjoyment of the whole. See Estate of Maxwell, 3 F.3d at 594. But the estate made no showing whatsoever that Margot Stewart’s use of the residential portion of the townhouse changed appreciably between the many years when Brandon lived with Margot as her houseguest and the final months of her life, when Brandon possessed a formal interest in the property.
Moreover, the Tax Court made other findings of fact that strongly supported its conclusion that Margot Stewart retained possession or enjoyment of the property following her formal transfer of an interest to Brandon. As already mentioned, Mar-got Stewart received 100% of the income from the rental portion of the Manhattan property, the significance of which the majority attempts to minimize by dividing the property into its rental and residential components, and suggesting that the Tax Court erred by not making separate findings adequate to support a conclusion that the extent of the implied agreement covered the residence. But as the majority acknowledges, determining the scope of an implied agreement is far from an exact science, and the Tax Court here was permitted to draw some inferences in determining the agreement’s parameters. Maj. Op. at 156. The majority does not indicate why the Tax Court could not have drawn a *168 strong inference about how Margot and Brandon Stewart viewed their relationship to the residential portion of the Manhattan property from the way they acted with respect to the property’s rental income, which belied the estate’s contention that a bona fide tenancy in common had been created. See Estate of Thompson, 382 F.3d at 376 (“An implied agreement may be inferred from the circumstances surrounding both the transfer and subsequent use of the property.”).
In fact, the significance of the majority’s assertion—not to be found in prior case law—that the Tax Court was required to make separate findings regarding the commercial and residential portions of the Manhattan property cannot be overstated. By subdividing the property in this way, the majority first renders Margot Stewart’s receipt of the rental income—or any other evidence regarding the property’s so-called “commercial” portion—irrelevant to the determination whether she retained possession or enjoyment of the “residential” portion. The majority in effect shifts the burden of proving the existence of an implied agreement as to the residential portion to the Commissioner by depriving him of the natural inferences that flow from all the facts and circumstances surrounding this transfer—a single transaction which the majority admits included an implied agreement favoring Margot Stewart. The majority next makes it near impossible for the Commissioner to meet his new burden with the astounding claim, relying on cases saying merely that a transferor’s continued residence at a property after transfer is not alone sufficient to infer an implied agreement, that such residence “is highly probative of the absence of an implied agreement”! Maj. Op. at 158. This analysis makes it hard to conceive of a situation in which the Tax Court might properly find that despite the formal transfer of a fractional interest in property to a cohabitating child, the parent reserved for himself its possession and enjoyment so that the estate should not be permitted to avoid the payment of estate tax on the property’s value as a whole.
Properly considering all the facts and circumstances, and placing the burden where it belongs, it is abundantly clear that the Tax Court did not err here in holding against the estate. Brandon Stewart’s efforts to satisfy the estate’s burden of disproving the significance of the rental receipts—via trial testimony in which he explained that he had received none of the Manhattan rent because he and Margot Stewart had agreed to offset the costs and revenues of the Manhattan property against those associated with their East Hampton property—failed for lack of credibility. See Amalfitano v. Rosenberg, 533 F.3d 117, 123 (2d Cir.2008) (“In reviewing findings for clear error, we are not allowed to second-guess either the trial court’s credibility assessments or its choice between permissible competing inferences.”). The Tax Court’s adverse credibility finding, moreover, was supported by the inconsistency between Brandon’s testimony and that of his accountant, who indicated that he could not recall Brandon ever having told him of the offset plan. See Krieger v. Gold Bond Bldg. Prods., 863 F.2d 1091, 1098 (2d Cir.1988) (“[Wjhen a trial judge’s finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.”) (quoting Anderson, 470 U.S. at 575, 105 S.Ct. 1504).
Even if additional factual findings were required to support the Tax Court’s conclusions with respect to the residential portion of the property—which I dispute—• the Tax Court made such findings. As the *169 Tax Court noted, after Margot’s transfer of a 49% undivided interest to Brandon, she continued to pay the bulk of the expenses relating to the Manhattan property, contributing $21,790.85 in 2007 while Brandon paid only $1963. Estate of Stewart, 92 T.C.M. (CCH) 357, 358 (2006). The majority indicates, on the one hand, that Brandon’s payment of this sum without reimbursement was a “significant change[ ]” in his and Margot Stewart’s relationship to the property, Maj. Op. at 150-51, implying that it supports the conclusion that Brandon’s post-transfer relationship to the property was that of part-owner. At the same time, the majority suggests that Margot’s payment of more than her share of the property’s expenses decreased her net possession or enjoyment of the property. Maj. Op. at 160. But surely, Brandon’s payment of far less than his share of expenses as tenant in common—a bit over 8% of the total expenses, when he was the 49% owner of the property—supports the Tax Court’s conclusion that the transfer was not one of substance, in that Margot continued to fulfill the bulk of the responsibilities of ownership, notwithstanding Brandon’s formal interest.[2] Case law does not support the assertion that a tax court is precluded from finding that the transferor retained possession or enjoyment of the entirety of a property when the transferee made only token gestures showing that the transfer had substance, and where only minor changes occurred in the transferor’s possession or enjoyment. See Estate of Thompson, 382 F.3d at 376 (upholding inclusion of interest in gross estate where the “practical effect of ... changes [imposed by the transfer] during decedent’s life was minimal”); cf. Estate of Grace, 395 U.S. at 324, 89 S.Ct. 1730 (finding property held in trust includable in gross estate under 26 U.S.C. § 2038 when a reciprocal trust arrangement “leaves the settlors in approximately the same economic position as they would have been in had they created trusts naming themselves as life beneficiaries”); Estate of Wineman, 79 T.C.M. (CCH) at 2194 (noting that even payment of all property taxes by someone other than transferor is insufficient to show absence of an implied agreement giving transferor possession or enjoyment of the whole). Viewed in its entirety, the history of Margot and Brandon Stewart’s relationship to the Manhattan property, *170 and especially the lack of significant, objective changes in that relationship, strongly supports the Tax Court’s conclusion that Brandon Stewart remained, in essence, Margot Stewart’s houseguest. A fortiori, the record does not support a “definite and firm conviction that a mistake has been committed’ ” by the Tax Court in this case. Mobil Shipping, 190 F.3d at 67-68.
The majority purports to stop short of holding that, as a matter of law, post-transfer co-occupancy by the transferor and transferee will always preclude a finding of an implied agreement in favor of the transferor. But given the facts present in this case, it is hard to imagine any evidence—short of an admission at trial by the estate'—'that would be sufficient to demonstrate the existence of an implied agreement regarding a co-occupied residence. The transferor’s retention- of all rent from the commercial portion of the very same property is deemed irrelevant as a matter of law to the conclusions a tax court may draw regarding the property’s residential portion, notwithstanding the court’s obligation to consider all circumstances surrounding the property in assessing. the parties’ intentions. And a transferee’s minimal post-transfer participation in the obligations of a tenancy in common is held, strangely and again as a matter of law, both to aid in establishing the existence of an adverse agreement and to undercut the economic value for estate tax purposes of that which was retained. If the majority’s opinion imposes any burden of proof on the estate, much less the onerous one that precedent requires, I cannot see it. Cohabitating family members are all but invited to engage in sham transactions that have no impact upon the transferor’s possession and enjoyment of a property, and whose only purpose is tax avoidance. It is not the job of this Court, of course, to close loopholes that Congress has left in the tax code. Here, however, the majority inexplicably reopens a loophole that the legislature has, in unmistakable terms, long since commanded shut.
Evidence demonstrating the existence of a genuine post-transfer tenancy in common certainly could weigh against the conclusion that the transferor and transferee had an implied agreement that the transferor would continue to possess or enjoy the whole of a property. But since in this case there is not only an absence of such evidence, but the record actually shows that the parties to the transfer did not behave as though a tenancy in common had been created and the transferor’s relationship to the property did not, in substance, change, I cannot see how it was clear error for the Tax Court to find that the estate failed to carry its burden to disprove the existence of an implied agreement favoring the transferor with regard to both the commercial and residential aspects of this Manhattan townhouse. The majority’s reasoning, by focusing solely on Brandon Stewart’s residence at the townhouse as a tenant in common as dispositive, not only departs from prior case law and contravenes the text of section 2036, but also thoroughly undermines the statute, inviting inequitable disparities among those subject to the estate and gift taxes due to easy dodges by future tax avoiders.
I respectfully dissent.

. Although 26 U.S.C. § 2036(a) does not require that a transferor retain a legally enforceable right to possess or enjoy a property following transfer in order for a court to find that an implied agreement to that effect existed, see Estate of Maxwell, 3 F.3d at 593, it is worth noting that courts considering co-occupancy following 100% transfers—the cases upon which the majority so heavily relies— have considered the lack of any continuing right by the transferor to remain on the property to be significant in finding the absence of an implied agreement. See, e.g., Union Planters Nat'l Bank, 361 F.2d at 665 (noting that "at any time ... [the transferee] could have conveyed [the residence property] by her separate deed, without the consent of [the transferor]”); Stephenson v. United States, 238 F.Supp. 660, 663 (W.D.Va.1965) ("It seems clear in Virginia that, under the 1955 deed to her, [the transferee’s] ownership of the house was absolute, free and clear of any legal rights of her husband.”); Estate of Spruill v. Comm'r, 88 T.C. 1197, 1226-27, 1987 WL 49324 (1987) ("While [the transferee and his wife] may have assumed that [the transferor] would continue to live in the house after [transferor’s wife] died, ... such an assumption does not rise to the level of an implied agreement that decedent had retained the right to 'possess or enjoy' the homesite. On the contrary, [the transferee] testified that had [the transferor] not been able to get along with [the transferee’s wife, the transferor] would have had to leave.”). Unlike the transferor of a 100% interest, the transferor of a partial interest that results in a tenancy in common does retain substantial rights with respect to the affected property, and those rights extend, as just indicated, to enjoyment of the entire property. It is thus hardly "bizarre,” Maj. Op. at 158-59 n. 13, to carefully analyze transfers that result in a tenancy in common where section 2036 is concerned.

. The majority indicates that even if its legal analysis of the significance of Brandon Stewart’s nominal contributions is flawed, his failure to fulfill the obligations of a tenancy in common still are not sufficiently suggestive of an agreement favoring Margot. Maj. Op. at 159 n. 13 (observing that "a decedent’s payment of all or substantially all gross expenses post-transfer has, in many cases, not resulted in a finding of an implied agreement” (citing Estate of Roemer, 46 T.C.M. (CCH) at 1177; Stephenson, 238 F.Supp. at 663)). But the majority does not dispute the Tax Court's finding that an implied agreement did exist with respect to the property at issue in this case, and the majority’s citation to cases in which courts have declined to accord much weight to the decedent’s post-transfer payment of expenses fails to note either the relative absence of other evidentiary support for an implied agreement in those cases, see Stephenson, 238 F.Supp. at 663, or the existence of offsetting evidence in favor of the estate that was significant to the result, see Estate of Roemer, 46 T.C.M. (CCH) at 1179 (observing “[t]he evidence in the record clearly demonstrates the change in the decedent's state of mind regarding the residence after giving it to her daughter,” and noting that after the transfer, the decedent had referred to her daughter as her "landlord,” requested permission before inviting friends to the residence, and expressed a fear of being excluded and sent to a nursing home); id. (noting "[the daughter's] actions following the gifting of the residence also changed,” pointing to the fact that she, as transferee, had made substantive payments reflective of ownership, and crediting the daughter’s testimony that "if there had ever been a falling out ... [the decedent] would have been the one to have moved”).